2002 UT 65

Kenneth Alan BANKS, Susan Banks Baker, and Bransford Michael Banks, and John Does 1 through 50, Plaintiffs, Counterclaim Defendants, and Appellees,

v.

Nancy A. MEANS and John Does I through V, Defendants, Counterclaim Plaintiffs, and Appellant.

No. 20001071.

Supreme Court of Utah.

July 19, 2002.

James H. Faust, Salt Lake City, for plaintiffs.

J. Jay Bullock, Clinton J. Bullock, Karen Bullock Kreeck, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Decedent's children, Kenneth Alan Banks, Susan Banks Baker, and Bransford Michael Banks brought an action against decedent's sister, Nancy Means ("Ms.Means") seeking enforcement of a 1992 trust that was purportedly modified by a 1999 amendment. Under the terms of the 1999 amendment, Ms. Means would become the sole beneficiary of the trust, while the Banks children would become contingent beneficiaries. The trial court granted summary judgment in favor of the Banks children. Ms. Means appealed, arguing that the trial court erred by (1) granting the Banks children's motion for summary judgment, (2) denying Ms. Mean's cross-motion for summary judgment, and (3) admitting the deposition testimony of attorney Joseph L. Platt. We affirm the trial court's grant of summary judgment and hold that the 1999 amendment did not effect a revocation of the trust as required by the trust language. Therefore, the terms of the original trust document govern the disposition of the trust estate and the remaining issues are moot.

## BACKGROUND

¶ 2 On April 15, 1992, the decedent, Betty A. Banks ("Ms.Banks"), executed a document entitled the "Betty A. Banks Family Protection Trust," which was prepared by her attorney, Joseph L. Platt ("Mr.Platt"), As required by the terms of the trust, Ms. Banks, as settlor, transferred certain property into the trust and served as trustee until her death on August 24, 1999.

¶ 3 The trust provides that upon the death of Ms. Banks, the Banks children were to share equally in the proceeds of the trust estate and serve as joint trustees. Article I of the trust, "PURPOSES AND BIRTH DATES," declares "This Trust is established for the primary benefit of the Undersigned during the Undersigned's lifetime, for the Undersigned's family thereafter." The document then names Ms. Banks' family as Kenneth Alan Banks, Susan Banks Baker, and Bransford Michael Banks. Article IV, "DISPOSITION ON THE DEATH OF THE UN-

DERSIGNED," designates the Banks children as joint beneficiaries of the trust estate upon Ms. Banks' death. Article VI, "TRUSTEE PROVISIONS," names the Banks children as joint successor trustees.

¶ 4 The trust agreement provides that the trust is revocable, and that Ms. Banks, as settlor, can amend certain portions of the trust, subject to the provisions of the trust language. Article III provides:

### AMENDMENT, REVOCATION AND ADDITIONS TO TRUST

3.1 Rights of the Undersigned. As long as the Undersigned is alive, the Undersigned reserves the right to amend, modify or revoke this Trust in whole or in part, including the principal, and the present or past undisbursed income from such principal. Such revocation or amendment of this Trust may be in whole or in part by written instrument. Amendment, modification or revocation of this instrument shall be effective only when such change is delivered in writing to the then acting Trustee. On the revocation of this instrument in its entirety, the Trustee shall deliver to the Undersigned, as the Undersigned may direct in the instrument of revocation, all of the Trust property.

3.2 Interests of the Beneficiaries. The interests of the beneficiaries are presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death. As long as this Trust subsists, the Trust properties and all the rights and privileges hereunder shall be controlled and exercised by the Trustee named herein in their fiduciary capacity.

¶ 5 In August 1999, Ms. Banks executed an amendment to the trust. The amendment consists of three replacement pages inserted into the trust document. It does not change article I of the trust, which states that the trust's purpose is to benefit Ms. Banks during her lifetime and her family thereafter, and names the Banks children as her family. The amendment does, however, change the beneficiaries and the successor trustees. The amendment changes article IV, "DISPOSITION ON THE DEATH OF THE UN-

DERSIGNED," to allocate 100% of the trust estate to Ms. Banks' older sister, Ms. Means, on the death of Ms. Banks, with the Banks children listed as alternate beneficiaries should Ms. Means predecease Ms. Banks. In addition, article VI of the amendment, "TRUSTEE PROVISIONS," changes the successor trustee to Ms. Means, with the Banks children to serve as joint successor trustees if Ms. Means predeceases Ms. Banks.

¶ 6 After Ms. Banks died in August, 1999, the parties disputed whether the 1999 amendment or the original trust agreement governed the disposition of the trust. On October 14, 1999, the Banks children filed a complaint against Ms. Means seeking, among other things, a finding that they were the rightful trustees and beneficiaries of the trust, and were therefore entitled to the trust proceeds. Ms. Means counterclaimed, asserting that the 1999 amendment governed the disposition of the trust and that she was the sole beneficiary. After a series of motions and cross-motions, the trial court granted the Banks children's motion for summary judgment, and this appeal followed.

## STANDARD OF REVIEW

¶ 7 Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Gerbich v. Numed, Inc.*, 1999 UT 37, ¶ 10, 977 P.2d 1205. When reviewing the trial court's ruling in a motion for summary judgment, we consider all facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 13, 446 Utah Adv. Rep. 40, 48 P.3d 918. We review the trial court's grant of summary judgment for correctness, according no deference to that court's legal conclusions. *Oxendine v. Overturf*, 1999 UT 4, ¶ 7, 973 P.2d 417; *State v. Pena*, 869 P.2d 932, 936 (Utah 1994). In addition, we may affirm a grant of summary judgment on any ground available to the trial court, even if it was not relied

upon below. *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158; *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993).

## ANALYSIS

¶ 8 Ms. Means argues that the trial court erred when it (1) granted the Banks children's motion for summary judgment, (2) denied Ms. Means' motion for summary judgment, and (3) determined that the attorney-client privilege did not protect Mr. Platt's deposition statements.[1] When the trial court granted summary judgment to the Banks children, it found that their children's interest in the trust was vested subject to divestiture only through a revocation of the trust, that the trust was never revoked, and that the Banks children were therefore the sole beneficiaries of the trust and entitled to receive disbursement of the trust corpus as set forth in the original trust document.

## I. THE TERMS OF THE ORIGINAL TRUST AGREEMENT

¶ 9 It is well settled that "[a] trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of the beneficiaries." *Continental Bank & Trust Co. v. Country Club Mobile Estates, Ltd.*, 632 P.2d 869, 872 (Utah 1981)(citing *Restatement (Second) of Trusts* § 2 (1959)). "[O]nce the settlor has created the trust he is no longer the owner of the trust property and has only such ability to deal with it as is expressly reserved to him in the trust instrument." *Id.* (citing *Boone v. Davis*, 64 Miss. 133, 8 So. 202 (1886)). Thus, a settlor has the power to modify or revoke a trust only if and to the extent that such power is explicitly reserved by the terms of the trust. *Continental Bank*, 632 P.2d at 872; *see also Kline v. Utah Dep't. of Health*, 776 P.2d 57, 61 (Utah Ct.App.1989)(citing *Restatement (Second) of Trusts* §§ 330–331 (1959)); *accord Clayton v. Behle*, 565 P.2d 1132, 1133 (Utah 1977). Furthermore, "[t]he creation of a trust involves the transfer of

---

1. These statements were relevant to the Banks children's claim of undue influence or lack of capacity to amend the trust; because of our disposition of the other questions on appeal, we do not reach this issue.

property interests in the trust subject-matter to the beneficiaries. These interests cannot be taken from [the beneficiaries] except in accordance with a provision of the trust instrument." George G. Bogert & George T. Bogert, *Trusts & Trustees* § 998 (2d ed. rev.1983). Thus, our analysis begins with an examination of the original trust language to see what powers Ms. Banks reserved for herself as the trustee and what beneficial interests she created.[2]

### A. Revocation

¶ 10 Article III, entitled "AMENDMENT, REVOCATION AND ADDITIONS TO TRUST," clearly reserves the settlor's right to amend, modify or revoke the trust. Section 3.1 states "Rights of the Undersigned.... [T]he Undersigned reserves the right to amend, modify or revoke this Trust in whole or in part...." The trust specifies that "revocation or amendment of this Trust may be in whole or in part by written instrument. Amendment, modification or revocation of this instrument shall be effective only when such change is delivered in writing to the then acting Trustee." However, the trust indicates that in the case of complete revocation, "the Trustee shall deliver to the Undersigned, as the Undersigned may direct in the instrument of revocation, all of the Trust property." Thus, the trust specifies that for Ms. Banks to completely revoke the trust, all the property must be transferred back to Ms. Banks, after which she could presumably create a new trust or dispose of the property as she saw fit.

¶ 11 It is clear from the trust language that Ms. Banks reserved for herself the power to amend, modify, or revoke the trust in whole or in part. Any such changes were to be specified in writing and delivered to her, but in the case of a complete revocation, all the property in the trust was also to be delivered to Ms. Banks. Revocation is therefore a specific provision of the trust language and is not the same as an amendment or modification.

### B. Beneficiary Interests

¶ 12 Next, we examine the trust agreement to see what interests Ms. Banks created for the trust beneficiaries. Section 3.2 reads, "Interests of the Beneficiaries. The interests of the beneficiaries are presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death." By the plain language of the trust, the beneficiaries have "vested interests"[3] that continue until the interests are "revoked or terminated." Here, Ms. Banks reserved the power to revoke, modify, or amend the trust in whole or in part in section 3.1, but limited that power in section 3.2 with regard to the beneficiaries. Thus, a complete revocation was required to divest the beneficiaries of their vested interests.

¶ 13 Ms. Means relies on *In re Estate of Groesbeck*, 935 P.2d 1255 (Utah 1997) for the proposition that the language in section 3.2 merely proves that the trust is not illusory and does not restrict Ms. Banks' rights to divest the Banks children of their vested interests. Her reliance is misplaced. In *Groesbeck* we held that a revocable trust can be created, without being deemed illusory, as long as title to the property passes to the trustee and vested interests are created in the beneficiaries, even if these interests are subject to divestiture. *Id.* at 1257–58 (citing *Horn v. First Sec. Bank of Utah, N.A.*, 548 P.2d 1265, 1267 (Utah 1976)). That is, a reservation of the power to revoke does not make a trust invalid. *Id.* at 1257. We further observed that vested beneficiary interests are "subject to being divested by the exercise of the reserved power to amend or revoke the indenture in trust." *Id.* at 1258. Thus, we concluded that the trust was valid, even though the Groesbecks had reserved the right to revoke the trust and created vested beneficiary interests that were subject

---

**2.** Ms. Banks was the settlor of the trust, the "Undersigned" in the trust document, and the trustee of the trust once it was created.

**3.** A "vested" interest is something "[t]hat has become a completed, consummated right for present or future enjoyment; not contingent; un-conditional; absolute.... [A]n interest may be vested, even where it does not carry a right to immediate possession, if it does confer a fixed right of taking possession in the future." *Black's Law Dictionary* 1557 (7th ed.1999).

to divestiture via the specific provisions of the trust itself.[4] *Id.* at 1258. *Groesbeck,* therefore, does not require us to disregard the requirements of the trust language.

¶ 14 Ms. Banks reserved the right to amend, modify, or revoke the trust, specified how such changes were to be accomplished, and created vested beneficiary interests that could be divested only though a complete revocation of the trust. Our next step, therefore, is to look to the 1999 amendment to see whether it complied with the terms of the trust.

## II. THE 1999 AMENDMENT

¶ 15 The 1999 amendment contains two primary changes. First, it changes article IV, "DISPOSITION ON THE DEATH OF THE UNDERSIGNED," to allocate 100% of the trust estate to Ms. Means on the death of Ms. Banks. Second, article VI, "TRUSTEE PROVISIONS," changes Ms. Banks' successor trustee from the Banks children to Ms. Means, unless Ms. Means predeceases Ms. Banks. Thus, the 1999 amendment sought to change the beneficiary status of the Banks children, thereby divesting them of their vested interests in the trust.[5] As discussed earlier, the Banks children had vested interests in the trust which could only be divested according to the terms of the original trust document. Therefore, the 1999 amendment falls within the purview of article III, section 3.2 of the trust, which provides that beneficiary interests are only subject to divestiture via a revocation of the trust, and section 3.1, which requires that upon revocation the trust property must be delivered to Ms. Banks.

¶ 16 Neither of these requirements were met. Ms. Banks did not divest the Banks children of their vested interests in the trust because she did not completely revoke the trust in the 1999 amendment. In other words, the 1999 amendment did not effect a revocation of the trust that would have properly divested the Banks children of their vested interests under the terms of the trust itself. As we have previously stated, "[e]ven a revocable trust clothes beneficiaries ... with a legally enforceable right to insist that the terms of the trust be adhered to." *Continental Bank & Trust Co. v. Country Club Mobile Estates, Ltd.,* 632 P.2d 869, 872 (Utah 1981).

## CONCLUSION

¶ 17 We affirm the district court's grant of summary judgment to the Banks children and find that the Betty A. Banks Family Protection Trust dated April 15, 1992, governs the disposition of the estate of Betty A. Banks.

¶ 18 Associate Chief Justice DURRANT, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Chief Justice DURHAM'S opinion.

---

4. The *Groesbeck* trust language was remarkably similar to the trust language at issue here: "The interest of the beneficiaries is a present interest which shall continue until this Trust is revoked or terminated other than by death." *Id.* at 1258. In that case, however, we were not called upon to determine whether a revocation had taken place that would have divested the beneficiaries of their interests. *Id.*

5. Also notable is what the 1999 amendment did not do. It did not change the language in article I, stating that the purpose of the trust was for Ms. Banks and her family thereafter, or the specific identifications by name and birthdate of the Banks children as her family. Accepting Ms. Means' interpretation of the 1999 amendment would thus render some language null and void, and contravene the stated purpose of the Betty A. Banks Family Protection Trust.