2007 UT 78

John E. HOGGAN a.k.a. Jack E. Hoggan, Plaintiff, Appellant, and Counterclaim Defendant,

v.

William E. HOGGAN, Trustee; William E. Hoggan; and Bonnie Jilene Weber, Defendants, Appellees, and Counterclaim Plaintiffs.

No. 20051104.

Supreme Court of Utah.

Oct. 5, 2007.

J. Jay Bullock, Clinton J. Bullock, Karen Bullock Kreeck, Salt Lake City, for plaintiff.

Matthew C. Barneck, Brian C. Webber, Steven W. Call, Salt Lake City, for defendants.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Shortly before she passed away, Leona Hoggan ("Leona") amended a trust that she had created some fifteen years earlier. The amendment provided that, upon Leona's death, her son John Hoggan (a.k.a."Jack") would be forgiven a loan Leona made to him, rather than receiving a one-third interest in the trust property. Jack asserts that the language of the trust document did not authorize Leona to effect such an amendment. We disagree. Under our previous interpretations of very similar trust language in *Banks v. Means*, 2002 UT 65, 52 P.3d 1190, and *Flake v. Flake (In re Estate of Flake)*, 2003 UT 17, 71 P.3d 589, Leona retained the power to modify Jack's interest.

## BACKGROUND

¶ 2 Leona executed the original trust document in 1987. Under the terms of the trust, the trust property was to be used for Leona's benefit during her lifetime. Upon her death, the trust property was to be distributed equally among her three children—Jack, Bonnie Weber ("Bonnie"), and William Hoggan ("William"). Article XI of the trust, entitled "Revocation and Amendment," provides: "As long as the Undersigned is alive, she reserves the right[ ] to amend, modify, revoke, or remove from this Trust any and all property that she has contributed, in whole or in part, including the principal, and the present or past undisbursed income from such principal." This section also contains the following sentence: "The interest of the beneficiaries is a present interest which shall continue until this Trust is revoked or terminated other than by death."

¶ 3 In 2002, Leona signed an amendment to the trust that modified the allocation of the trust property upon her death. Under the amended distribution scheme, William was to receive an automobile, while the remainder of the trust property was to be either divided between William and Bonnie or transferred to the survivor of the two. As his only share of the trust property, Jack was to be forgiven any remaining indebtedness he owed to Leona at the time of her· death.

Leona passed away two months after executing the amendment.

¶ 4 Later that same year, Jack filed suit against William and Bonnie individually and against William in his capacity as trustee. The lawsuit sought to invalidate the amendment under various theories. Specifically, Jack asserted that the amendment was the result of undue influence on the part of William and that Leona suffered from diminished capacity. Jack also sought to invalidate the amendment and reform the trust documents under the theory that the amendment violated the terms of the trust. Jack subsequently filed a motion for partial summary judgment under the latter theory. William and Bonnie then filed cross-motions for partial summary judgment, arguing that the second amendment was valid or, in the alternative, that the terms of the trust should be reformed to reflect Leona's intent.

¶ 5 In a memorandum decision, the district court ruled that the amendment was valid and that William and Bonnie were therefore entitled to partial summary judgment. William and Bonnie then submitted to the district court proposed findings of fact and conclusions of law. Jack objected on the basis that the proposed factual findings and legal conclusions exceeded the scope of the issues addressed in the district court's memorandum decision. The district court overruled Jack's objections and entered an order consistent with William and Bonnie's proposed findings and conclusions.

¶ 6 The parties stipulated that Jack's claims of undue influence and reduced capacity would be dismissed with prejudice so that the partial summary judgment would become final and appealable. Jack now appeals the partial summary judgment.

## STANDARD OF REVIEW

¶ 7 "On summary judgment, we review the [district] court's legal conclusions for correctness." *Quaid v. U.S. Healthcare, Inc.*, 2007 UT 27, ¶ 8, 158 P.3d 525. So long as a court confines its analysis to the language of the trust instrument and does not resort to extrinsic evidence of intent, the interpretation of a trust is an issue of law.

*See Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985) ("A contract's interpretation may be either a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent."). Because we restrict our review in this case to the language of the trust instrument, we cede no deference to the district court.

## ANALYSIS

¶ 8 Jack has raised two challenges to the summary judgment entered by the district court. First, he argues that the district court erred in concluding that the 2002 amendment was valid. Second, he asserts that the court erred when it entered findings of fact and conclusions of law that exceeded the findings and conclusions articulated in its initial memorandum decision.

### I. VALIDITY OF THE 2002 AMENDMENT

■ ¶ 9 "Absent fraud or mistake, a settlor 'has the power to modify a trust only if and to the extent that such a power was reserved by the terms of the trust.'" *Flake v. Flake (In re Estate of Flake),* 2003 UT 17, ¶ 13, 71 P.3d 589 (quoting *Kline v. Utah Dep't of Health,* 776 P.2d 57, 61 (Utah Ct. App.1989)); *accord Banks v. Means,* 2002 UT 65, ¶ 9, 52 P.3d 1190; Restatement (Second) of Trusts § 331 (1959). We accordingly begin by analyzing the terms of the trust to determine whether Leona reserved the right

to amend the trust document. Because we find that she did, we then examine the scope of her authority to amend the trust and whether she exceeded any limitations placed upon that power.

■ ¶ 10 Leona retained a broad grant of authority to amend the trust. Article XI of the trust instrument provides: "As long as the Undersigned is alive, she reserves the right[ ] to amend, modify, revoke, or remove from this Trust any and all property that she has contributed, in whole or in part, including the principal, and the present or past undisbursed income from such principal." Under a literal reading of the trust language, the object of the phrase "to amend, modify, [and] revoke" is the trust property, rather than the trust instrument. This reading is nonsensical, however, because one does not typically amend, modify, or revoke property, but rather, written legal documents. In interpreting nearly identical trust language in *Flake,* 2003 UT 17, ¶ 14, 71 P.3d 589,[1] we eschewed this rather odd literal reading and interpreted the language to mean that the settlor had reserved the right to amend, modify, or revoke the trust. Consistent with this precedent, we hold that Leona retained the right to amend the trust instrument.

■ ¶ 11 Her power to amend the trust, however, was circumscribed. Article XI of the trust also states, "The interest of the beneficiaries is a present interest which shall continue until this Trust is revoked or terminated other than by death."[2] In *Banks,* we

---

1. The analogous *Flake* trust language read:

   As long as the Undersigned is alive, he reserves the right, without the consent or approval of any other, to amend, modify, revoke, or remove from this Trust the property that he has contributed, in whole or in part, including the principal and the present or past undisbursed income from such principal.

   2003 UT 17, ¶ 14.

2. Language asserting that beneficiaries have a "present interest" or a "presently vested interest" in a trust has apparently become common within trusts drafted in Utah. We suspect that drafters include such language with the intent of warding off potential challenges to the trust on grounds that it is illusory. *See Banks,* 2002 UT 65, ¶¶ 12–13, 52 P.3d 1190. Unfortunately, such phrases have been the focus of recent litigation and have the potential to produce results not

within the contemplation of the drafters of trusts or their clients. Indeed, the potential for confusion is great because in many living trusts, like the one at issue here, the beneficiaries have no immediate right of possession or enjoyment of the trust property. In such instances, the insertion of language proclaiming that the beneficiaries have a "present interest" simply contradicts the operative terms of the trust. *See Black's Law Dictionary* 816 (7th ed.1999) (defining a present interest as "[a] property interest in which the privilege of possession or enjoyment is present and not merely future; an interest entitling the holder to immediate possession"). Similarly, trusts in which the settlor retains the right to amend or revoke the instrument do not convey "presently vested rights" to beneficiaries because their interests are contingent upon the settlor not amending or revoking the trust. *See id.* at 1557 (defining the term "vested" as a "consummated

held that very similar trust language[3] required "a complete revocation ... to divest the beneficiaries of their vested interests." 2002 UT 65, ¶ 12, 52 P.3d 1190. In accordance with this interpretation of the trust language, we invalidated an amendment to the *Banks* trust that completely divested named beneficiaries of their interests. *Id.* ¶¶ 15–16. Therefore, under the very similar language of the Hoggan trust, Leona could not amend the trust to completely divest one of the beneficiaries of his or her interest without first revoking the trust. Jack relies on *Banks* in arguing that the amendment violated the terms of the trust.

¶ 12 Jack's reliance is misplaced in light of our subsequent decision in *Flake.* We clarified in *Flake* that such trust language invalidates only amendments that effect a complete divestment of an interest in the trust.

In interpreting trust language very similar to that in *Banks* and nearly identical to the language found in the Hoggan trust,[4] we held:

> The beneficial interest of Mrs. Flake was merely amended, and not completely divested as was the case in *Banks*. The dispositive issue in the present case is whether there was a complete divestiture of a beneficial interest as in *Banks*, or whether there was simply a change in the quality, or scope, of the beneficial interest. We held in *Banks* that revocation was required when terminating a vested beneficial interest. Here, we find that there is no requirement of revocation where the beneficial interest is simply modified or amended but not terminated.

*Flake*, 2003 UT 17, ¶ 17, 71 P.3d 589 (citation omitted).

---

right for present or future enjoyment; not contingent; unconditional; absolute").

The impetus for including such phrases within trust agreements appears to originate, unfortunately, from our holding that a trust is invalid unless the beneficiary's interest vests during the settlor's lifetime. *Alexander v. Zion's Sav. Bank & Trust Co.,* 2 Utah 2d 317, 273 P.2d 173, 174 (1954), *aff'd on reh'g,* 4 Utah 2d 90, 287 P.2d 665 (1955). *But see* Restatement (Second) of Trusts § 59 cmt. c (1959) ("A provision in the terms of the trust under which interests of the beneficiaries do not vest until a future time is not invalid unless such interests may not vest within the period of the rule against perpetuities....."). In an apparent effort to uphold prior precedent while at the same time avoiding the invalidation of countless trusts intended to serve as substitutes for wills, we later said that such trusts created vested interests that were subject to divestment. *Horn v. First Sec. Bank of Utah, N.A.,* 548 P.2d 1265, 1267 (Utah 1976). Although the term "vested interest subject to divestment" is more of an oxymoron than a meaningful legal term, over the decades this phrase has been used by this court to uphold trusts in which the beneficiaries' interests were not vested under the traditional meaning of the term. *See Banks,* 2002 UT 65, ¶ 13, 52 P.3d 1190; *Groesbeck v. Groesbeck (In re Estate of Groesbeck),* 935 P.2d 1255, 1257–58 (Utah 1997).

We hereby disavow the use of this phrase and the antiquated and now widely discredited rule articulated in *Alexander* that gave rise to it. We agree with the analysis of the Restatement (Third) of Trusts, which advocates the abandonment of such confusing and disingenuous terminology in favor of an open recognition that there is no requirement that a beneficiary's interest be either present or vested:

Issues are obscured and litigation invited by confusing or unsound dicta often found in opinions that attempt to explain why something is or is not a present trust. Asking whether something is a "trust" or a "mere agency" is at best question begging. So is the suggestion in many opinions that, in order to uphold a disposition, a court must find a "present" or "vested" interest in one or more beneficiaries other than the settlor; in fact these statements are untrue unless they mean, simply, "presently existing" interests. And assertions that a settlor must relinquish "dominion and control" over the property are merely erroneous dicta.

These statements confuse the issue, and maybe the reader, ignoring the reality that these very courts regularly and properly find valid trusts where settlors have retained complete control, and where the other beneficiaries usually, if drafting is competent, have only future interests that are not only defeasible (by revocation or amendment) but also "contingent" upon surviving the settlor and maybe other events as well....

Restatement (Third) of Trusts § 25 reporter's notes, cmt. b (2003).

**3.** The analogous *Banks* trust language read: "The interests of the beneficiaries are presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death." 2002 UT 65, ¶ 4, 52 P.3d 1190.

**4.** The analogous *Flake* trust language read: "The interest of the beneficiaries is a present vested interest which shall continue until the Trust is revoked or terminated other than by death." 2003 UT 17, ¶ 17, 71 P.3d 589.

¶ 13 Under the clear precedent of *Banks* and *Flake,* if the 2002 amendment completely divested Jack of any interest in the trust, the amendment would violate a condition placed upon the power to amend because Leona failed to revoke the trust first. · If the amendment merely changed the quality or scope of Jack's beneficial interest, however, it would be valid. The amendment changed Jack's interest in the trust from an equal share in the trust property to forgiveness of any remaining indebtedness to Leona at the time of her death. Jack does not contest that he still owed his debt to Leona at the time of her death and that the forgiveness of this legal obligation to pay the debt is a benefit conferred upon him under the amendment. Because Jack's interest in the trust was not completely divested but only modified, the amendment does not violate the terms of the trust and is therefore valid.

¶ 14 Jack argues that we should overrule *Flake* because the holding in that case would allow settlors to effectively eliminate a beneficiary's interest in a trust by merely modifying that interest to a negligible amount. We decline such an invitation. First, Jack does not assert that the benefit he received from the trust was nominal. Therefore, his argument applies only to hypothetical future cases and would not be dispositive in this case. Second, the potential outcome that Jack finds objectionable is under the control of the drafters of trust instruments. If a settlor deems such an outcome to be unpalatable, it can easily be avoided through careful drafting.

## II. FINDINGS AND CONCLUSIONS OF THE DISTRICT COURT

¶ 15 Jack also argues that the ·district court erred in adopting findings of fact and conclusions of law that were not articulated in its original memorandum decision. He primarily asserts that the additional findings of fact relating to Leona's state of mind and her intent in including certain provisions .of the trust were improper and that we should therefore refuse to consider these additional findings. We need not address the merits of this argument because the findings to which Jack objects are unnecessary to our holding.

The only facts necessary to our holding are the terms of the trust and the undisputed existence of Leona's outstanding loan to Jack. The additional findings and conclusions to which Jack objects are simply irrelevant.

## CONCLUSION

¶ 16 Because the 2002 amendment merely modified Jack's interest in Leona's trust, the amendment is valid, and we therefore affirm the summary judgment entered by the district court.

¶ 17 Chief Justice DURHAM, Justice DURRANT, Justice NEHRING, and Judge LUDLOW concur in Justice PARRISH'S opinion.

¶ 18 Having disqualified himself, Associate Chief Justice WILKINS does not participate herein; District Judge ERIC A. LUDLOW sat.