2012 UT 13

Thomas **WARNE**, individually and as Trustee of the Avis P. Warne Family Protection Trust and the Ira B. Warne Family Protection Trust, Appellee and Plaintiff,

v.

Jeffrey **WARNE**, individually and as Trustee of the Avis P. Warne Family Protection Trust and the Ira B. Warne Family Protection Trust, Appellant and Defendant.

No. 20100125.

Supreme Court of Utah.

March 6, 2012.

Edward R. Munson, Ryan M. Harris, Salt Lake City, for appellee.

Clark R. Nielsen, Kathryn J. Steffey, Salt Lake City, for appellant.

## AMENDED OPINION *

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 In 2003, Ira B. Warne (Ira) executed the Partial Revocation of and Amendment to the Ira B. Warne Family Protection Trust (Partial Revocation). The purpose of the Partial Revocation was to terminate the interest of one of Ira's sons, Thomas Warne (Tom), who had been designated as a beneficiary in the original trust instrument. On summary judgment, the district court invalidated the Partial Revocation based on our

holding in *Banks v. Means*, 2002 UT 65, 52 P.3d 1190. The district court also held that Tom was entitled to one-half of the personal property of Ira's estate pursuant to the distribution provisions of Ira's will.

¶ 2 Tom's brother, Jeffrey Warne (Jeff), appeals. We reverse the district court's grant of summary judgment and hold that the Partial Revocation complies with Utah Code section 75–7–605 (section 605), which has statutorily overruled our holding in *Banks*. We also hold that the distribution of Ira's personal property is governed by the terms of the Ira B. Warne Family Protection Trust (the Trust), rather than by Ira's will, and therefore reverse the district court's order awarding Tom one-half of that property. Because the district court did not reach the issue of whether Ira's Partial Revocation was a product of Jeff's undue influence, we remand for consideration of that claim.

## BACKGROUND

¶ 3 In 1991, Ira executed the Ira B. Warne Family Protection Trust (the Trust or Ira's Trust). The Trust was established "for the primary benefit of [Ira] during [his] lifetime, for [Ira's] surviving spouse, and for [Ira's] family thereafter." After the deaths of Ira and his wife, the Trust property was to be divided equally among Ira's sons, Tom and Jeff. The Trust was a "living" or "inter vivos" trust in which Ira, as settlor, "reserve[d] the right to amend, modify or revoke th[e] Trust in whole or in part, including the principal, and the present or past undisbursed income from such principal." The Trust document states that "revocation or amendment ... may be in whole or in part by written instrument." And the Trust provides that "[t]he interests of the beneficiaries are presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death." Finally, the Trust contains an after-acquired property section providing that all of Ira's property, whenever acquired, automatically becomes part of the Trust corpus.

¶ 4 In 2002, this court issued its decision in *Banks v. Means*, 2002 UT 65, 52 P.3d 1190. In *Banks*, a settlor had created a revocable

---

* A correction was made in ¶ 21 and footnote 4 was added.

trust that provided for amendment, modification, or revocation through language that was identical to the language in Ira's Trust. *Id.* ¶ 4. Like Ira's Trust, the trust in *Banks* named the settlor's children as beneficiaries and identified their interests as "presently vested interests subject to divestment." *Id.* And, like Ira, the settlor in *Banks* executed an amendment before her death. *Id.* ¶ 5. Under the terms of the amendment, the settlor's sister became the primary beneficiary and the settlor's children became alternate beneficiaries who would take only if the settlor's sister predeceased her. *Id.* The settlor's children challenged the amendment and we invalidated it. *Id.* ¶¶ 6, 16. We held that under the terms of the trust, the only way the settlor could terminate the children's "vested" interest was through a complete revocation of the trust; a mere amendment was insufficient. *Id.* ¶¶ 14–16.

¶ 5 In 2003, subsequent to the death of his wife, Ira executed the Partial Revocation and a codicil to his last will and testament. Ira stated that he was seeking to "preempt the results of the case *Banks v. Means.*" The Partial Revocation removed Tom as a beneficiary and successor trustee, leaving Jeff as the sole remaining beneficiary and successor trustee. It also removed the language previously contained in paragraph 3.2, which stated that "the interests of the beneficiaries are presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death." This language was supplanted with language expressly stating that the beneficiaries' interests were not vested, but rather contingent, and subject to the absolute control of the Trustees. Ira died in August 2007.

¶ 6 Tom filed suit on May 12, 2008. He sought to invalidate the Partial Revocation, arguing that it was the product of Jeff's undue influence and that it was, in any event, invalid under *Banks v. Means.* Tom also asked the district court to declare that, even if the Partial Revocation was valid, it had not affected his status as a legatee of one-half of Ira's personal property. Jeff counterclaimed, seeking a declaration that the Partial Revocation was valid. Jeff also requested that, in the event the court invalidated the Partial Revocation, the court reform the Trust pursuant to Utah Code section 75–7–

415 to conform to Ira's intent. Tom moved for partial summary judgment, seeking a declaration that the Partial Revocation was invalid under *Banks.* He also sought summary judgment on Jeff's counterclaims.

¶ 7 After both parties filed memoranda but before the hearing on the motion for partial summary judgment, Jeff retained new counsel. At the hearing, Jeff's new counsel argued for the first time that Utah Code sections 75–7–605 and 75–7–606, rather than *Banks,* controlled. These sections had been enacted in 2004 as part of the legislature's adoption of the Utah Uniform Trust Code (UUTC). 2004 Utah Laws 332 (codified at UTAH CODE ANN. § 75–7–605 (Supp.2011)). Jeff's counsel provided copies of the relevant sections to both the district court and Tom's counsel and argued that the legislature had effectively overruled our holding in *Banks v. Means.*

¶ 8 The district court granted Tom's motion for partial summary judgment in a written opinion issued some weeks after argument. In it, the court did not address Jeff's argument that section 605 had overruled *Banks.* Rather, the court's decision relied exclusively upon *Banks.* It held that Ira had not properly terminated Tom's vested interest under *Banks* because he had failed to completely revoke the Trust. The district court also ruled that Tom was entitled to one-half of Ira's personal property pursuant to the distribution provisions of Ira's will.

¶ 9 The case was thereafter reassigned to another district judge and Jeff moved the court to alter or amend its judgment. He again asked the court to apply section 605 and declare the Partial Revocation valid. The new judge denied Jeff's motion, stating that the prior judge had properly declined to consider the statutory argument that Jeff had made for the first time during oral argument on the summary judgment motion. On January 29, 2010, the district court certified its ruling as final.

¶ 10 Jeff filed a timely appeal. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

■ ¶ 11 Summary judgment is appropriate where there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). We review the district court's grant of summary judgment for correctness, according no deference to its legal conclusions. *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 3 n. 2, 258 P.3d 539.

## ANALYSIS

¶ 12 Jeff raises three primary issues on appeal. First, Jeff contends that the district court erred in deciding the validity of the Partial Revocation under *Banks v. Means*, 2002 UT 65, 52 P.3d 1190, rather than section 605 of the UUTC, and that the Partial Revocation complies with the statute. In the alternative, Jeff asserts that the district court erred when it denied his request to reform the Trust pursuant to Utah Code section 75–7–415 to conform to Ira's clear intent. Finally, Jeff argues the district court erred in ruling that Tom was entitled to one-half of Ira's personal property.

¶ 13 We hold that the district court erred in relying on *Banks* and failing to apply the relevant provisions of the UUTC. We further hold that Ira's Partial Revocation satisfies the requirements of the UUTC. Finally, we hold that Tom is not entitled to one-half of Ira's personal property under the terms of Ira's will because, at the time of Ira's death, the Trust contained all of Ira's personal property. Because we hold that the Partial Revocation complies with the terms of the UUTC, we do not reach Jeff's alternative argument that the district court should have reformed the Trust.

## I. IRA PROPERLY TERMINATED TOM'S INTEREST IN THE TRUST BY COMPLYING WITH SECTION 605, WHICH STATUTORILY OVER-RULED OUR HOLDING IN *BANKS*

¶ 14 Jeff first argues that Ira's Partial Revocation complies with section 605, which

Jeff contends overrules our holding in *Banks v. Means*, 2002 UT 65, 52 P.3d 1190. Tom responds that Jeff waived the statutory argument. In the alternative, he argues that the statute does not overrule *Banks*. Finally, Tom contends that, even if the statute does overrule *Banks*, it cannot be applied here because it was enacted after Ira executed his Partial Revocation.

¶ 15 We hold that Jeff's statutory argument was properly preserved, that section 605 overrules *Banks*, that the statute is applicable here, and that the Partial Revocation satisfied the statutory requirements for terminating Tom's interest in the Trust.

### A. The District Court Erred by Refusing to Consider Jeff's Argument that Section 605 Controls

¶ 16 As a threshold matter, we must decide whether the district court properly declined to address Jeff's argument that section 605, rather than *Banks*, controls this case. Tom asks us to disregard the statute because Jeff raised it for the first time during oral argument on the summary judgment motions and the district court did not address it.[1] Thus framed, the issue is one of preservation. An issue is preserved for appeal when it is "presented to the trial court in such a way that the trial court has an opportunity to rule on [it]." *State v. Lovell*, 2011 UT 36, ¶ 9, 262 P.3d 803 (internal quotation marks omitted). "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. In evaluating whether a trial judge has had an opportunity to correct an alleged error, we consider three factors: (1) whether the issue was "raised in a timely fashion," (2) whether the issue was "specifically raised," and (3) whether "supporting evidence or rele-

---

1. The order entered by the first district court judge granting Tom's motion for summary judgment makes absolutely no reference to the statutory argument. It is therefore unclear whether the first district judge made a conscious decision to disregard the statute because he had conclud-

ed that it had not been timely raised, or whether his failure to address it was merely an oversight most likely caused by the fact that there was no reference to the statute in the parties' written submissions.

vant authority" was introduced. *Id.* (internal quotation marks omitted).

¶ 17 Tom does not contend that Jeff's statutory argument was not specifically raised,[2] nor does he argue that Jeff failed to present relevant legal authority.[3] Rather, Tom asserts only that the argument was not timely because Jeff did not raise it in his written memorandum opposing Tom's motion for partial summary judgment. Specifically, Tom argues that it would have been unfair for the district court to have considered Jeff's statutory argument because, under the circumstances, Tom had no meaningful opportunity to respond. According to Tom, if we consider Jeff's statutory argument on appeal, we will be condoning the tactic of intentionally raising arguments for the first time during oral argument on a motion.

¶ 18 An argument is timely when the district court has sufficient time to address it prior to making a ruling. *See, e.g., Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983) (holding that, for purposes of preservation, an argument was "made too late" when "it was not presented to the trial court prior to the ruling on the motion for summary judgment"). We have reasoned that a district court is given an opportunity to avoid error so long as the argument is raised before the court rules.

¶ 19 In this case, Jeff's counsel raised his argument that the UUTC governs the validity of the Partial Revocation during the hearing on Tom's motion for summary judgment. We agree with Tom that it would have been preferable for Jeff to have raised this argument at an earlier stage in the proceedings so that Tom would have been better able to

respond. But we do not agree that Jeff's failure to do so justified the district court's failure to consider it. Jeff's belated statutory argument bore upon the central issue in the case. Once Jeff's attorney made the district court aware that the central (and only) cases upon which Tom relied had been arguably overruled by a legislative enactment, the district court had an obligation to explore the matter further before ruling. We thus hold that Jeff's argument, although belated, was timely under the facts of this case.

¶ 20 We do not intend to minimize Tom's concerns and do not condone the practice of withholding arguments from briefing only to raise them in oral argument. But there is no evidence to support Tom's contention that Jeff intentionally withheld the argument to gain tactical advantage. Rather, it appears the belated argument was a product of Jeff's last minute change in counsel and new counsel's additional research into the controlling law. Were there an indication otherwise, our decision may differ.

¶ 21 Perhaps more importantly, Tom must shoulder some of the responsibility for the court's failure to consider the statutory argument. Tom did not request the opportunity to file a supplemental brief regarding the applicability of the statute. And Tom's own counsel was apparently unaware of and therefore similarly failed to raise the statute's potential applicability during the briefing process.[4]

¶ 22 We therefore conclude that Jeff's statutory argument was timely made. Because it was timely, specifically raised, and accom-

---

2. The argument was specifically brought up and discussed in two separate instances during the summary judgment hearing. Jeff's counsel stated "the Uniform Trust Code applies to Ira's trust according to section 75–7–1103 and that the statute states that this code applies to all trusts created on ... before or after its effective date." Later, Jeff's counsel argued that section 605 controlled. Specifically, he argued that notwithstanding *Banks* and its progeny, section "605 is very clear that the settlor may revoke or amend an irrevocable [sic] trust by substantially complying with the method provided in the terms of the trust or any other method that manifests clear and convincing evidence of the settlor's intent."

3. Jeff's counsel cited specifically to the statute during oral argument. In addition, he provided the district court judge and Tom with copies of the statute.

4. We take this opportunity to remind lawyers of their ethical obligation to disclose to the court known legal authority "directly adverse to the position of the client and not disclosed by opposing counsel." *See* UTAH R. PROF'L CONDUCT 3.3(a)(2).

panied by supporting authority, we hold that it was adequately preserved for appeal.

### B. Section 605 Applies to Ira's Partial Revocation Even Though He Executed It Before the Statute's Effective Date

■ ¶ 23 We now consider the merits of Jeff's argument that section 605 of the UUTC statutorily overrules our holding in *Banks*. Section 605 provides that a settlor may revoke, amend, or modify a revocable trust in any of the following ways:

(a) by substantially complying with a method provided in the terms of the trust; or

(b) if the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:

(i) executing a later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or

(ii) any other method manifesting clear and convincing evidence of the settlor's intent.

UTAH CODE ANN. § 75–7–605(3) (Supp.2011).

¶ 24 In an opinion issued simultaneously with this one, we hold that section 605 statutorily overruled our holding in *Banks* that the settlor of a revocable trust may terminate the interest of a beneficiary only by completely revoking the trust. *Patterson v. Patterson*, 2011 UT 68, ¶ 37, 266 P.3d 828. In *Patterson*, we apply section 605(3) of the UUTC to operative facts nearly identical to those presented here and validate a settlor's attempt to terminate the "vested interest" of one of her sons. But the parties in *Patterson* did not raise any issue concerning the retroactive application of the UUTC. In contrast, Ira executed his Partial Revocation before the UUTC became effective. We therefore must determine whether the statute can be applied to Ira's Partial Revocation.

■ ¶ 25 We begin with a few words about retroactivity. Generally, retroactive application of statutes " 'is not favored in the law.' " *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 39, 104 P.3d 1185 (quoting *Bowen v.*

*Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly...."). Thus, absent clear legislative intent to the contrary, we generally presume that a statute applies only prospectively. *See, e.g., Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997); *see also Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483 (acknowledging that the presumption against retroactive legislation is "deeply rooted in our jurisprudence"). This presumption has been codified by the legislature. UTAH CODE ANN. § 68–3–3 (Supp.2011) ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive.").

■ ¶ 26 Under this framework, we must determine whether the legislature has clearly expressed its intent that the UUTC be applied retroactively. Such intent "may be indicated by explicit statements that the statute should be applied retroactively, or by clear and unavoidable implication that the statute operates on events already past." *Evans & Sutherland*, 953 P.2d at 437 (citations omitted).

¶ 27 The UUTC includes a section setting forth the statute's "[a]pplication to existing relationships." UTAH CODE ANN. § 75–7–1103 (Supp.2011). That section states as follows:

(1) Except as otherwise provided, this chapter applies to:

(a) all trusts created before, on, or after July 1, 2004;

(b) all judicial proceedings concerning trusts commenced on or after July 1, 2004; and

(c) judicial proceedings concerning trusts commenced before July 1, 2004 unless the court finds that application of a particular provision of this chapter would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which

case the particular provision of this chapter does not apply and the superseded section will apply.

(2) Any rule of construction or presumption provided in this chapter applies to trust instruments executed before July 1, 2004 unless there is a clear indication of a contrary intent in the terms of the trust.

(3) An act done before July 1, 2004 is not affected by this chapter.

(4) If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before July 1, 2004, that statute continues to apply to the right even if it has been repealed or superseded.

*Id.*

¶ 28 Under subsections (1)(a) and (b), there is no question that the UUTC generally applies to *all* trusts and. to this proceeding.[5] But Tom contends that the limitations expressed in subsections (2) and (3) bar the retroactive application of section 605 to the Partial Revocation. Specifically, Tom argues that section 605 is a rule of construction that cannot be applied retroactively because section 605 conflicts with Ira's intent to limit his ability to terminate Tom's and Jeff's "vested interests." He also argues that section 605 cannot be applied retroactively because Ira's execution of the Partial Revocation was an "act" that transpired prior to the statute's effective date of July 1, 2004. We disagree.

1. Section 605 Is Not a Rule of Construction and, Even if It Were, It Would be Applied Retroactively Pursuant to Utah Code Section 75–7–1103(2)

¶ 29 Utah Code section 75–7–1103(2) states that "[a]ny rule of construction or presumption provided in this chapter applies to trust instruments executed before July 1, 2004 unless there is a clear indication of a contrary intent in the terms of the trust." We conclude that section 605 is not a rule of construction. And, even if it were, it would still apply here because Ira did not express any intent whatsoever in his Trust regarding the rules of construction to be applied when interpreting it.

5. Tom initiated this proceeding on May 12, 2008.

a. Section 605 is Not a Rule of Construction

¶ 30 Tom argues that section 605 is a rule of construction because it governs the manner in which trusts and trust amendments are interpreted by allowing a settlor to amend or revoke a trust by any method manifesting clear and convincing evidence of the settlor's intent unless the methods for amendment or revocation are expressly made exclusive in the terms of the trust. We are unpersuaded.

¶ 31 The UUTC contains a section that expressly lists the rules of construction that apply to the interpretation of trust instruments. That section, appropriately titled "Rules of Construction," states that "[t]he rules of construction that apply to the interpretation of and disposition of property by will or other governing instrument, as defined in section 75–1–201, also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." Utah Code Ann. § 75–7–111. Thus, the UUTC's rules of construction are found in section 75–1–201, and section 605 is not a rule of construction as that phrase is defined in the UUTC. As a result, section 75–7–1103(2) does not preclude application of section 605.

b. Even Assuming Section 605 is a Rule of Construction, Ira Did Not Express an Intent to Apply Any Particular Rule of Construction

¶ 32 Tom argues that Ira clearly expressed his intent to limit his ability to terminate Tom's and Jeff's interests by including language in the original Trust stating that "the interests of the beneficiaries are presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death." But the provision relating to the vesting of a beneficiary's interest does not constitute the expression of Ira's intent to apply any particular rule of construction or presumption in interpreting his Trust. Therefore, even were we to assume that section 605 is a "rule of construction," the

UUTC would still govern here because Ira's Trust document does not evince a clear indication regarding the rules of construction to be applied when construing the Trust's amendment and revocation provisions. Moreover, we have previously rejected the notion that settlors necessarily included the "vested subject to divestment" language in trust instruments with an intent to limit their ability to later direct the disposition of their assets. *See Hoggan v. Hoggan*, 2007 UT 78, ¶ 11 n. 2, 169 P.3d 750; *Flake v. Flake (In re Estate of Flake)*, 2003 UT 17, ¶ 17 n. 2, 71 P.3d 589; *see also Patterson v. Patterson*, 2011 UT 68, 266 P.3d 828.[6] Rather, such language was routinely included by attorneys in trust documents in an apparent attempt "to save the Trust from the doctrine of merger and to prove that the Trust is not illusory." *Flake*, 2003 UT 17, ¶ 17, 71 P.3d 589. Indeed, we have characterized the use of the "vested subject to divestment" language as "unfortunate[ ]" because it has "the potential to produce results not within the contemplation of the drafters of trusts or their clients." *Hoggan*, 2007 UT 78, ¶ 11 n. 2, 169 P.3d 750.

¶ 33 In addition, other provisions of Ira's Trust demonstrate Ira's intent to retain his ability to modify or terminate the beneficiaries' interests. For example, Ira expressly reserved the "right to amend, modify or revoke [the] Trust in whole or in part, including the principal, and the present or past undisbursed income from such principal." And, in his capacity as Trustee, Ira retained exclusive control over "the Trust properties and all the rights and privileges" set forth in the Trust, including the rights of the beneficiaries.

¶ 34 We therefore conclude that section 605 is not a rule of construction and that,

even if it were, Ira's Trust does not clearly express Ira's intent to apply a contrary rule of construction. As a result, section 605 applies to Ira's Trust pursuant to the legislature's clear directive that a "rule of construction . . . applies to trust instruments executed before July 1, 2004." UTAH CODE ANN. § 75–7–1103(2).

**2. Ira's Partial Revocation Is Not an "Act" of the Nature That Would Preclude Application of the Statute**

 ¶ 35 We next turn to Tom's argument that the UUTC cannot be applied here because of the provisions of section 75–7–1103(3). That subsection states that "[a]n act done before July 1, 2004 is not affected by this Chapter." *Id.* § 75–7–1103(3). The term "act" is not defined in the UUTC. Tom reads "act" broadly to include Ira's execution of the Partial Revocation. If we interpret the term "act" in isolation, Tom's construction is plausible inasmuch as common definitions of the term "act" are broad enough to encompass the execution of a trust amendment. *See* BLACK'S LAW DICTIONARY 27 (9th ed. 2009) (defining "act" as "[s]omething done or performed"); WEBSTER'S NEW COLLEGE DICTIONARY 13 (2007) (defining "act" as "a thing done"). "But we do not interpret the 'plain meaning' of a statutory term in isolation." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465. And Tom's reading of the statute is illogical when we read section 75–7–1103(3) together with sections 75–7–1103(1) and 75–7–1103(2), as our rules of statutory construction require. *See, e.g., Anderson v. Bell*, 2010 UT 47, ¶ 22, 234 P.3d 1147.

 ¶ 36 Under our rules of statutory construction, we must give effect to every provision of a statute and avoid an interpre-

---

**6.** We acknowledge the theoretical possibility that a settlor may have relied upon our construction of the "vested subject to divestment" language in *Banks* by including similar language in his trust with an intent to limit his ability to terminate the interest of a beneficiary. But just nine months after *Banks* was issued, we decided *Flake*. In *Flake*, we held that, despite "vested subject to divestment" language, a settlor retained his ability to reduce the interest of a beneficiary as long as the interest was not completely divested. 2003 UT 17, ¶ 17, 71 P.3d 589. We reaffirmed

this holding four years later in *Hoggan*. 2007 UT 78, ¶ 13, 169 P.3d 750. Thus, although a settlor of a revocable trust could not completely eliminate a beneficiary's interest under *Banks*, after *Flake* and *Hoggan*, the settlor could effectively terminate the interest by reducing it to a nominal amount. Under this precedent, it would be illogical to assume that a settlor after 2003 would include "vested subject to divestment" language with an intent to limit his ability to eliminate the interest of a beneficiary.

tation that will render portions of a statute inoperative. *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958. To achieve this goal, we construe the provision at issue "with every other part or section so as to produce a harmonious whole." *Sill v. Hart*, 2007 UT 45, ¶ 7, 162 P.3d 1099 (internal quotation marks omitted). Consistent with these canons of construction, we must interpret section 75–7–1103(3) in harmony with sections 75–7–1103(2) and 75–7–1103(1).

¶ 37 Subsection (1)(a) states unequivocally that the UUTC applies retroactively to "all trusts." UTAH CODE ANN. § 75–7–1103(1)(a). And subsection (2) states that all rules of construction or presumptions contained in the UUTC apply retroactively to all trusts created before its effective date. *Id.* § 75–7–1103(2). But subsection (3) states that the UUTC does not affect any "act done" before its effective date. *Id.* § 75–7–1103(3). If the term "act" as used in subsection (3) were interpreted to include the act of executing a trust document, then subsections (1) and (2) would be rendered a nullity. This cannot be what the legislature intended. In order to reconcile these two provisions, we conclude that the term "act" does not include a settlor's execution of a trust instrument.[7] Therefore section 605 must be applied retroactively pursuant to the legislature's clear directive that "a rule of construction … applies to trust instruments executed before July 1, 2004." *Id.* § 75–7–1103(2).

## C. Ira's Partial Revocation Complies with the Requirements of Section 605

■ ¶ 38 Having determined that section 605 of the UUTC applies retroactively, we now apply that section to the Partial Revoca-

tion. Under section 605, a "settlor may revoke or amend a revocable trust … by substantially complying with a method provided in the terms of the trust." UTAH CODE ANN. § 75–7–605(3)(a). Alternatively, if the terms of a revocable trust do not provide a method for amendment or revocation that is "expressly made exclusive," the settlor may revoke or amend the trust by "any … method manifesting clear and convincing evidence of the settlor's intent." *Id.* § 75–7–605(3)(b)(ii). We hold that the terms of Ira's Trust do not expressly make exclusive a method for revocation or amendment and that the amendment constitutes an expression of Ira's clear intent to terminate Tom's interest.

■ ¶ 39 The Trust instrument purported to grant the beneficiaries "presently vested interests subject to divestment which shall continue until this Trust is revoked or terminated other than by death." But as we expressly recognized in *Hoggan*, this language does not actually create a "present" or "vested" interest, but rather a future interest that is contingent upon a host of factors including the beneficiary surviving the settlor, the existence of property in the trust corpus at the time of the settlor's death, and the settlor not amending or revoking the trust. *See Hoggan*, 2007 UT 78, ¶ 11 n. 2, 169 P.3d 750. In the Trust document, Ira "reserve[d] the right to amend, modify or revoke the Trust in whole or in part." And the Trust states that "revocation or amendment … may be in whole or in part by written instrument." We therefore conclude that the terms of the Trust do not provide a

---

7. For purposes of this appeal, we need not precisely define the scope of the "acts" contemplated by section 1103(3). It appears, however, that the legislature had in mind any of the multitude of acts a trustee might undertake in connection with his management of a trust. We find it particularly instructive that the words "act" and "action" are mentioned throughout the UUTC provisions pertaining to trustee conduct. For example, the UUTC states that "[a] person designated as trustee, without accepting the trusteeship, may … *act* to preserve the trust property if, within a reasonable time after *acting*, the person sends a rejection of the trusteeship to the settlor or, if the settlor is dead or lacks capacity,

to a qualified beneficiary." UTAH CODE ANN. § 75–7–701(3)(a) (emphases added). It also states that "[c]otrustees who are unable to reach a unanimous decision may *act* by majority decision." *Id.* § 75–7–703(1) (emphasis added). Another provision pertaining to the duty of loyalty lists a host of *"actions"* that are not precluded by that duty even though they might otherwise appear to present conflicts of interest. *Id.* § 75–7–802(8) (emphasis added). Section 1103(3)'s prohibition on retroactive application of the UUTC to "acts" reflects the notion that the acts of a trustee should be judged by legal standards that were effective when the conduct was undertaken.

method for amendment or revocation that is expressly made exclusive.

¶ 40 Because the Trust did not specify an exclusive method of amendment, Ira could under the statute amend or revoke the Trust by "any other method manifesting clear and convincing evidence of [his] intent." UTAH CODE ANN. § 75-7-605(3)(b)(ii). In his Partial Revocation, Ira specifically revised the distribution provisions of the Trust. As part of this revision he stated, "[t]he Undersigned has in mind but makes no provision for Thomas W. Warne, or his issue, or any other individual not specifically referred to." In so doing, Ira modified that part of the Trust instrument that named Tom as a beneficiary of the Trust. And he did so in a manner that provides clear and convincing evidence of his intent to eliminate Tom's interest in the Trust. Thus, the Partial Revocation satisfies the statutory requirement.

II. TOM IS NOT ENTITLED TO ONE-HALF OF IRA'S PERSONAL PROPERTY PURSUANT TO THE DISTRIBUTION PROVISIONS OF IRA'S WILL BECAUSE, AT THE TIME OF IRA'S DEATH, THE TRUST CONTAINED ALL OF IRA'S PERSONAL PROPERTY

¶ 41 The district court ruled that Tom was entitled to one-half of Ira's personal property pursuant to the distribution provisions of Ira's will. But in reaching this conclusion, the district court did not consider how the Trust might affect the distribution of Ira's personal property. This was error because, under the terms of the Trust, all of Ira's personal property was Trust property. Tom's argument that he is entitled to half of Ira's personal property is based on the provisions of Ira's will.

¶ 42 Ira's Last Will and Codicil states in relevant part:

2.1(a) Tangible Personal Property—Gift by Written Statement. I give my tangible

personal property not otherwise specifically devised in this Will, except any such property which, at the time of my death, is used in a trade or business, in accordance with a written statement signed by me or in my handwriting which I intend to leave at my death.

2.1(b) Contingent Gift. I give all of my tangible personal property not effectively disposed of by such written statement, or otherwise specifically devised in this Will, except any such property which, at the time of my death, is used in a trade or business ... to my issue who survive me, by representation, to be divided among them as they shall agree. . . .

2.2 Pour-Over to Family Protection Trust. On the 15th day of July, 1991, I executed a written Trust Agreement entitled the IRA B. WARNE Family Protection Trust. That Trust and this Will form part of an integrated plan to provide for the disposition of my estate upon my death and both instruments should be construed and administered accordingly. I hereby give, devise and bequeath all of my property, not effectively disposed of by the above described written statement or by other provisions of this Will, whether real, personal, or mixed, and wherever situate to the Trustee of such Trust, in trust, to be administered and distributed pursuant to the provisions of such Trust including any amendments made subsequent to the execution of this Will that are in effect at the time of my death.

¶ 43 Jeff argues that the provisions of Ira's will had no effect on the distribution of Ira's personal property because all of Ira's personal property was contained in the Trust at the time of Ira's death.[8] We agree.

¶ 44 The Trust instrument contains an "after-acquired property" clause in which Ira expressed his specific intention to include within the Trust corpus all of the property he would ever own.[9] To effectuate this intent,

---

8. Tom argues that Jeff waived this argument because he did not raise it before the district court. We disagree. In his memorandum in opposition to Tom's motion for summary judgment, Jeff argued specifically that "there are no

items of personal property that are part of Ira's estate."

9. Stated in full, the "after-acquired property" clause provides as follows: "It is specifically the intention of [Ira] that all real and personal prop-

in schedule A of the Trust, Ira transferred "any and all personal property now owned or hereafter acquired" to the trustees of the Ira B. Warne Family Living Trust. Schedule A was neither subsequently modified by Ira nor nullified by any subsequent document, including the Partial Revocation. Consequently, there was no personal property left to be distributed under Ira's will at the time of his death. As there was no personal property to distribute under the will, the district court erred in ruling that the will entitled Tom to half of Ira's personal property.

### CONCLUSION

¶ 45 We reverse the district court's ruling granting Tom partial summary judgment. Jeff's argument that section 605 of the UUTC controls the validity of the Partial Revocation was timely made and the district court erred in failing to consider the statute. Section 605 applies retroactively. Under that section, Ira properly terminated Tom's interest in the Trust. We further hold that Tom is not entitled to any of Ira's personal property under Ira's will because, at the time of Ira's death, all of Ira's personal property was held in the Trust. Because the district court never ruled on the issue of whether Ira's Partial Revocation was a product of Jeff's undue influence, we remand for consideration of that claim.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE joined.

erties now owned by [Ira], except for joint tenancy property, may be added to this Trust; provided further that all future real and personal properties acquired by [Ira] may become a part of this Trust at the time acquired by [Ira]."