*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 63**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JED A. GRESSMAN,
*Plaintiff and Appellee,*
*v.*
STATE OF UTAH,
*Defendant and Appellant.*

No. 20110965
Filed October 18, 2013

Fourth District, Nephi Dep't
The Honorable Steven L. Hansen
No. 090600014

Attorneys:

Douglas G. Mortensen, Salt Lake City, for appellee

John E. Swallow, Att'y Gen., Nancy L. Kemp, Patrick B. Nolan,
Asst. Att'ys Gen., Salt Lake City, for appellant

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
and JUSTICE PARRISH joined.

JUSTICE LEE filed a dissent.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 The State appeals from the district court's order posthumously declaring Jed Gressman factually innocent of the crimes he was convicted of in 1993 and awarding his widow financial assistance payments under the Post-Conviction Remedies Act (PCRA). The State argues the district court erred by (1) finding that Mr. Gressman's claims under the PCRA survived his death; (2) determining Mr. Gressman to be factually innocent as a matter of law based on the prior vacatur of his conviction; and (3) awarding prejudgment interest on the financial assistance payments.

¶2 We find that Mr. Gressman's PCRA claims did not abate upon his death and that the district court properly substituted his widow as the plaintiff in this suit. The district court erred, however, when it found that the vacatur of Mr. Gressman's conviction conclusively

established his factual innocence, as defined by the PCRA. Finally, we hold that the version of the PCRA relevant to this case does not permit the district court to award prejudgment interest. We therefore reverse for further proceedings consistent with this opinion.

## BACKGROUND

¶3 Mr. Gressman was accused of rape and aggravated sexual assault after he and his co-defendant, Troy Hancock, offered a woman a ride in Mr. Hancock's truck. The woman claimed that during this ride, Mr. Gressman and Mr. Hancock began to fondle her, over her protests, and that they ultimately forced her out of the truck at a secluded location, where Mr. Gressman raped her, aided by Mr. Hancock. At trial, the State presented the testimony of the alleged victim and a DNA expert, who testified that DNA testing of semen recovered from the alleged victim could not exclude Mr. Gressman as the source of the semen.

¶4 Mr. Gressman was convicted of aggravated sexual assault and sentenced to a term of five years to life. In 1996, after Mr. Gressman had served thirty-nine months of that sentence, he and the Juab County Attorney jointly moved the district court to dismiss all charges against him based on newly-discovered evidence. Most importantly, more advanced DNA testing established that semen recovered from the victim did not come from Mr. Gressman. Reasoning that this newly-discovered evidence would have materially influenced the jury's deliberations, the district court vacated Mr. Gressman's conviction and granted him a new trial. The State chose not to file new charges against Mr. Gressman, and no trial occurred.

¶5 In 2009, Mr. Gressman filed suit under the PCRA, seeking to establish his factual innocence and obtain financial assistance payments under that statute. Mr. Gressman died during the pendency of the suit, so counsel moved to substitute his widow. The State moved to dismiss, claiming that Mr. Gressman's claims abated upon his death. Ultimately, both sides moved for summary judgment on Mr. Gressman's factual innocence petition. The district court, in a single order, granted the motion to substitute Mr. Gressman's widow, denied the State's motion to dismiss, denied the State's motion for summary judgment, and granted Mr. Gressman's widow's motion for summary judgment. This latter decision was premised on the notion that Mr. Gressman's factual innocence had already been determined when his conviction was vacated. After so ruling, the district court awarded Mr. Gressman's

widow PCRA assistance payments—including prejudgment interest. The State appeals.

## STANDARD OF REVIEW

¶6 The appellate briefing raises two issues of statutory interpretation: (1) whether Mr. Gressman's claims survive his death and (2) whether the district court properly awarded prejudgment interest on the assistance payments it awarded. Because the answer to both of these questions turns upon our interpretation of the PCRA and Utah's survival statute, we afford no deference to the district court. *See Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614 (The interpretation of a statute is a legal question reviewed de novo.) We likewise review de novo the district court's summary adjudication of Mr. Gressman's factual innocence. *See Gudmundson v. Del Ozone*, 2010 UT 33, ¶ 10, 232 P.3d 1059 ("We review the district court's decision to grant summary judgment for correctness . . . ." (internal quotation marks omitted)).

## ANALYSIS

### I. MR. GRESSMAN'S PCRA CLAIMS SURVIVED HIS DEATH

*A. Mr. Gressman's Claims Would Abate Under the Common Law*

¶7 At common law, personal tort actions abate upon the death of either the claimant or the tortfeasor, while tort claims for property damage or conversion survive. *Morrison v. Perry*, 140 P.2d 772, 781–82 (Utah 1943); *see Mason v. Union Pac. Ry. Co.*, 24 P. 796, 796 (Utah Terr. 1890) ("In the case of injuries to the person, whether by assault, battery, false imprisonment, slander, or otherwise, if either party who received or committed the injury die, no action can be supported either by or against the executors, or other personal representatives." (internal quotation marks omitted)). The rationale for this distinction is

> that the reason for redressing purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished, whereas, since the property or estate of the injured person passes to his personal representatives, a cause of action for injury done to these can achieve its purpose as well after the death of the owner as before.

*Barnes Coal Corp. v. Retail Coal Merchs. Ass'n*, 128 F.2d 645, 649 (4th Cir. 1942).

¶8 Mr. Gressman's statutory claim for compensation upon a show ing of factual innocence is not a claim for injury to property that would survive a claimant's death at common law. None of the injuries associated with imprisonment of a factually innocent person are in any way associated with the kinds of property claims that survived a claimant's death at common law. Such claims typically involved damage to or destruction of tangible personal property. *See, e.g., Morrison*, 140 P.2d at 782 (holding that an action for recovery of damages to an automobile caused by a collision survived death).

¶9 A factual innocence claim, rather, is essentially a claim for injury to the person, which abated at common law. The closest analogues at common law appear to be claims for false imprisonment and for malicious prosecution, both of which were subject to abatement. *See Mason*, 24 P. at 796 (false imprisonment does not survive death); *State ex rel. Crow v. Weygandt*, 162 N.E.2d 845, 848 (Ohio 1959) ("A cause of action for malicious prosecution did not survive the death of its owner at common law.") These claims are comparable to a factual innocence claim in the nature of the harm (false imprisonment) and the wrong (malicious prosecution) they vindicate. And they were both personal claims that abated at death under the common law.

¶10 Because Mr. Gressman's claims would abate upon his death under the common law, his suit may only survive under the aegis of a statutory provision. We therefore examine whether the PCRA or Utah's general survival statute operate to preserve Mr. Gressman's claims.

*B. The Relevant Version of the PCRA does not Provide for the Survival of Mr. Gressman's Claims*

¶11 When a cause of action is created by statute, we look first to that statute for an indication of survival or abatement. The survivability of the factual innocence claim under the PCRA implicates two subsidiary questions. First is which version of the PCRA applies—the 2012 amendment, which speaks explicitly to survivability,[1] or the prior version of the statute, which does not.

---

[1] The 2012 amendments, enacted after this case was filed in the district court, provide that "[a] claim for determination of factual innocence under this part is not extinguished upon the death of the petitioner. The assistance payment provisions of Section 78B-9-405 may not apply, and financial payments may not be made, if the finding of factual innocence occurs after the death of the petitioner.
(continued...)

Second is the proper construction of the statute—whether it can be read to provide for survivability or whether it preserves the common-law rule of abatement.

1. The Preamendment Version of the PCRA Applies

¶12    The Utah Code articulates a general presumption against retroactivity. UTAH CODE § 68-3-3. By statute, "'a provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive.'" *State v. Clark*, 2011 UT 23, ¶ 11, 251 P.3d 829 (quoting UTAH CODE § 68-3-3). In this case, there is no expression of retroactivity in the 2012 amendments, and no other basis for applying the amended provisions exists. Accordingly, we find the preamendment version of the statute controls.

¶13    Under our case law, "the parties' substantive rights and liabilities are determined by the law in place at the time when a cause of action arises," while their procedural rights and responsibilities are governed by "the law in effect at the time of the procedural act" at issue. *Id.* ¶¶ 12, 14 (internal quotation marks omitted). Thus, if survivability is a matter of substance, then that question is governed by the law in place when Mr. Gressman's claim arose. If it is a procedural matter, on the other hand, then subsequent enactments (like the 2012 amendments) could be deemed to apply.

¶14    We view the 2012 amendments in question as clearly substantive. The amended provisions foreclose postjudgment interest for financial assistance payments and cut off such payments altogether after the death of the defendant-petitioner. *See* UTAH CODE §§ 78B-9-402(14), -405(8) (2012). They accordingly "enlarge, eliminate, or destroy vested or contractual rights" and do not merely dictate "the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Brown & Root Indus. Serv. v. Indus. Comm'n of Utah*, 947 P.2d 671, 675 (Utah 1997)

---

¹ (...continued)
In addition, any payments already being made under Section 78B-9-405 shall cease upon the death of the petitioner." UTAH CODE § 78B-9-402(14) (2012). In 2013, after briefing and oral argument in this appeal had been completed, the legislature amended the PCRA once again. The 2013 amendment provides that a factual innocence claim survives the death of a petitioner and that financial assistance payments shall be remitted to a surviving spouse if the petitioner was married at the time the petitioner was found guilty and remained continuously married until the petitioner's death. *Id.* § 78B-9-402(14) (2013).

(internal quotation marks omitted). We therefore hold that Mr. Gressman's petition is governed by the law in effect in 2008, not by the 2012 amendments enacted during the pendency of this action.

¶15    In arguing the contrary, the State seeks to invoke a narrow exception to the retroactivity ban for amendments that merely clarify existing law, insisting that the bill introducing the amendments announced that it "ma[de] clarifying amendments to factual innocence provisions." 2012 Utah Laws 896. We decline to invoke this exception.

¶16    Though our case law has occasionally referred to "amendments clarifying statutes" as an "exception" to the retroactivity ban, *see, e.g., Keegan v. State*, 896 P.2d 618, 620 (Utah 1995), we have never applied them as such. Instead, our retroactivity case law has invoked this "exception" only in connection with statutory amendments that we have characterized as procedural.[2]

---

[2] *Due S., Inc. v. Dep't of Alcoholic Beverage Control*, 2008 UT 71, ¶ 14, 197 P.3d 82 (determining that an amendment affecting a standard of review was retroactive because it was a clarification and because "the standard of review is a matter of procedural, rather than substantive, law" (internal quotation marks omitted)); *Kilpatrick v. Wiley, Rein & Fielding*, 2001 UT 107, ¶ 59, 37 P.3d 1130 (applying an amendment retroactively because the court considered the amendments to be both a clarification and procedural because they did not affect the plaintiffs' "vested or contractual right[s]"); *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 440 (Utah 1997) (applying an amendment retroactively because it was a "clarifying amendment . . . to a procedural statute"); *State v. Higgs*, 656 P.2d 998, 1001–02 (Utah 1982) (holding that remedial amendments that affect only procedure or practice applied retroactively); *McGuire v. Univ. of Utah Med. Ctr.*, 603 P.2d 786, 788 (Utah 1979) (relying on *Foil v. Ballinger* to hold that an amendment to a procedural statute had retroactive effect); *Foil v. Ballinger*, 601 P.2d 144, 150–51 (Utah 1979) (determining that amendments to a procedural statute are retroactive, particularly when "a remedial statute [is] passed to clarify an earlier procedural enactment"); *cf. State v. Angilau*, 2011 UT 3, ¶ 1 n.2, 245 P.3d 745 (noting that an amendment applied retroactively after "both parties . . . stipulated that [the] statutory issues are . . . moot"); *Gohler v. Wood*, 919 P.2d 561, 563 n.2 (Utah 1996) (applying a statute retroactively where the parties all conceded that the statute was a clarification with retroactive effect); *Hamblin v. City of Clearfield*, 795 P.2d 1133, 1136 (Utah 1990) (giving a statute "retroactive" effect where the analysis

(continued...)

And when our cases discuss the "clarifying amendment exception," it is always in tandem with or as a counterpart to our analysis of the above-noted distinction between substance and procedure. *See Foil v. Ballinger*, 601 P.2d 144, 151 (Utah 1979) ("The principle [that amendments to procedural statutes apply to accrued, pending and future actions] applies with particular force to a remedial statute passed to clarify an earlier procedural enactment.").[3] That limitation is entirely appropriate. The governing statute, after all, makes no express room for an exception for *clarifying amendments* per se. The sole exception spelled out explicitly by statute requires an express provision for retroactivity. *See* UTAH CODE § 68-3-3.

¶17    In any event, the 2012 amendments cannot be construed as a mere clarification. "An amendment serves as a clarification when it corrects a discrepancy or merely amplif[ies] . . . how the law should have been understood prior to [the amendment]." *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 43, 234 P.3d 1105 (alterations in original) (internal quotation marks omitted). In past cases, we have decided whether an amendment is a mere clarification by asking whether it alters or explains language already present in the original statute or whether the amendment added new language or subsections that "did not exist in any form before the amendments were made." *Id.* ¶ 44. An amendment that does the former is more likely clarifying in nature; one that does the latter is not. *See id.*

¶18    The 2012 amendments concerning survivability fall in the latter category. The amendments set up a bifurcated survival scheme, wherein a basic claim for expungement survives a claimant's death, but claims for monetary assistance payments abate.

---

[2] (...continued)
under the previous version of the statute was "the same as [the] analysis under the . . . amendment").

[3] *See Keegan*, 896 P.2d at 620 ("[A]n exception exists for amendments clarifying statutes, which are applied retroactively, so long as they do not enlarge, eliminate, or destroy vested or contractual rights." (citations and internal quotation marks omitted)); *Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.*, 784 P.2d 459, 461–62 (Utah 1989) (alluding to the clarifying amendment exception but stating that "[a] later statute or amendment should not be applied in a retroactive manner to deprive a party of his rights or impose greater liability upon him." (internal quotation marks omitted)).

*See* UTAH CODE § 78B-9-402(14) (2012). Nothing in the prior version of the PCRA could possibly be construed as contemplating this bifurcated system. The 2012 amendment establishes an entirely new framework, not a clarification of an old one.

¶19    The preamble to the amendment, relied on heavily by the State, is not to the contrary. Though the preamble describes the bill as "mak[ing] clarifying amendments to factual innocence provisions," it goes on to specify the changes made, in a manner differentiating clarifying changes from substantive ones. 2012 Utah Laws 896. For instance, it states that the bill "clarifies the requirement of a hearing if the state does not stipulate to factual innocence" and "clarifies that all proceedings are governed by Utah Rules of Civil procedure, Rule 65C." *Id.* In describing the amendments related to survivability, however, the preamble in no way paints them as merely clarifying. Instead, it states that the bill "disallows prejudgment interest on payments made to a person after a finding of factual innocence" and "provides that assistance payments on a claim of factual innocence are extinguished upon the death of the petitioner." *Id.* Thus, the preamble recognizes that some of the amendments are clarifications and some are not—and places the survivability provision in the latter category.

¶20    For these reasons, we determine that the 2012 amendments discussing the survivability of factual innocence claims are not retroactive.[4] Rather, survivability for purposes of this case is governed by the versions of the PCRA and Utah's survival statute in effect when Mr. Gressman's claim arose. A cause of action arises "when it becomes remediable in the courts," which normally occurs when "all elements of a cause of action come into being." *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990). This case is unusual, however, in that Mr. Gressman did not have a remediable factual innocence claim until the legislature first created the cause of action in 2008. *See* 2008 Utah Laws 2298–2300. Therefore, Mr. Gressman's claim did not arise until that time, and we look to

---

[4] Mr. Gressman argues that the State is estopped from claiming that the 2012 amendments are retroactive because it assured the legislature that the amendments would not apply to Mr. Gressman's claim but would apply only to future cases. Because we determine that the 2012 amendments are not retroactive, we decline to address this argument. However, we do consider the State's conduct in arguing to this court that the amendment is retroactive, after assuring the legislature that the amendment would not be retroactive, to be troubling.

the 2008 versions of the PCRA and the survival statute to decide whether Mr. Gressman's factual innocence claim survives his death.

2. The Preamendment PCRA Does Not Provide for the Survival of Mr. Gressman's Claims

¶21    The applicable version of the PCRA does not speak to survivability. As the State notes, the statute does contemplate a claimant "who has been convicted of a felony offense" petitioning the court "for a hearing to establish that the person is factually innocent of the crime or crimes of which the person was convicted." *See* UTAH CODE § 78B-9-402(2)(a) (2008). And the statutory remedies—financial assistance payments, expungement, an innocence letter, and access to certain services and programs—are aimed at the wrongfully convicted person. *See id.* § 78B-9-405(1)(a), (6), (7) (2008). But those provisions answer only the threshold question of who the primary claimant is; they say nothing of significance on the secondary question of whether such claimant's interests survive death and may be asserted by a representative. On its face, then, the PCRA seems not to speak to the question of survivability.

¶22    The legislative history relied on by the district court is not to the contrary. At most, that history indicates only that members of the legislature generally analogized the PCRA's compensation scheme to "a workers compensation system" and suggested that it was patterned after the 9/11 Victims Compensation Fund of 2001. But that tells us nothing of consequence to the survivability of the statutory factual innocence claim under the PCRA. The PCRA's compensation provisions may be analogous to workers compensation and the 9/11 Victims Compensation Fund in some respects, but they are distinguishable in another, more salient sense: workers compensation statutes and the 9/11 fund expressly provide for survivability, while the PCRA does not.[5] Absent some specific provision for survivability in the PCRA, we cannot rely on general references to other claims that do survive death to import the same principle into the PCRA. We accordingly find no basis in the

---

[5] *Compare* UTAH CODE § 34A-2-106(1)(a) ("[T]he injured employee, or in case of death, the employee's dependents, may claim compensation[.]"), *and* Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001, at 22–23, *available at* www.justice.gov/final_report.pdf, *with* UTAH CODE § 78B-9-405 (2008).

PCRA—or in its legislative history—to support a holding for survivability.

*C. Utah's Survival Statute Preserves Mr. Gressman's Claims*

¶23    Because the PCRA does not address the survival of Mr. Gressman's claims, we examine Utah's general survival statute to determine whether it supplants the common law rule of abatement in this case. We find that it does.

¶24    The common law rule of abatement of personal tort claims has been modified to one extent or another by survival statutes, which have been adopted by most states. PROSSER AND KEETON ON THE LAW OF TORTS § 126 (W. Page Keeton et al. eds., 5th ed. 1984). Utah's survival statute provides that "[a] cause of action arising out of personal injury to a person . . . does not abate upon the death of the wrongdoer or the injured person." UTAH CODE § 78B-3-107(1)(a). In determining whether a statutory claim under the PCRA constitutes a cause of action for "personal injury to a person," we look to analogous common law claims. *See* PROSSER AND KEETON ON THE LAW OF TORTS, *supra*, § 126 (Federal statutory claims under statutes without survival provisions "either survive or not according to whether a similar action would survive under state law."); *Wallace v. Kato*, 549 U.S. 384, 387–89 (2007) (finding that the common law tort of false imprisonment "provides the proper analogy" for determining the accrual date of a statutory section 1983 cause of action). As previously noted, the closest common law analogs to Mr. Gressman's statutory factual innocence claim are false imprisonment and malicious prosecution. *Supra* ¶ 9.

¶25    Under the common law, both false imprisonment and the malicious prosecution of a criminal action are categorized as torts against the person (as opposed to torts against property) because these torts infringe upon an individual's personal liberty interests.[6] The Restatement (Second) of Torts groups false imprisonment with other personal torts, such as battery and the negligent infliction of bodily harm, because false imprisonment similarly implicates an invasion of the "interests of personality." RESTATEMENT (SECOND) OF

---

[6] In addition to personal torts and property torts, Utah recognizes injury to reputation as a third category of tortious conduct. UTAH CONST. art. I, § 11 ("All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law . . . ."). We do not decide here whether reputational torts, such as defamation, fall within the ambit of Utah's survival statute.

TORTS, Chapter 2, Introductory Note (1965); *see also* PROSSER AND KEETON ON THE LAW OF TORTS, *supra*, § 11 (The tort of false imprisonment "protects the personal interest in freedom from restraint of movement."); *id.* § 125A (categorizing false imprisonment, along with battery and negligence, as a tort "affecting the person," rather than a tort "against real property"). Utah has also long recognized false imprisonment as an "injur[y] to the person" along with assault and battery. *Mason*, 24 P. at 796 (internal quotation marks omitted). And although the malicious prosecution of a civil suit is considered a property tort, the malicious prosecution of a criminal action is similarly categorized as a personal injury tort. *Wild v. Rarig*, 234 N.W.2d 775, 791–92 (Minn. 1975); *Woodford v. McDaniels*, 81 S.E. 544, 546 (W. Va. 1914) ("An action for malicious prosecution . . . is an action for a personal injury.").

¶26    In accord with this long-standing division between personal torts and property torts, other states have interpreted statutory references to actions for "personal injury," "injury to the person," or similar references to personal torts to include actions for false imprisonment and malicious prosecution. *Merimee v. Brumfield*, 397 N.E.2d 315, 318 (Ind. Ct. App. 1979) (Interpreting the term "personal injuries" in a survival statute, the Indiana Court of Appeals held that "[t]here is considerable authority for the proposition that the term 'personal injuries' is a broader, more comprehensive and significant term than the term 'bodily injury.' It includes malicious prosecution [and] false imprisonment."); *Rivera v. Double A Transp., Inc.*, 727 A.2d 204, 207–08 (Conn. 1999) (A two-year statute of limitations on actions "to recover damages for injury to the person" applied to an action for false imprisonment because "the term 'injury,' . . . under both the common and legal usage of the term, includes harm to the mind as well as to the body."); *Morton v. W. Union Tel. Co.*, 41 S.E. 484, 485 (N.C. 1902) (Interpreting the term "injury to the person" in a survival statute, the North Carolina Supreme Court held that "[p]ersonal injuries may be either bodily or mental, but, whether one or the other, they infringe upon the rights of the person, and not of property."); *Ex parte Holsonback*, 182 So. 28, 29–30 (Ala. 1938) (malicious prosecution claim survives under a statute providing for the survival of "all personal actions, except for injuries to the reputation"); *Fricke v. Geladaris, Inc.*, 533 A.2d 971, 971, 973 (N.J. Super. Ct. App. Div. 1987) (malicious prosecution claim survives under a statute providing for the survival of an action for any "trespass done to the person").

¶27    In addition, the United States Supreme Court has held that a statutory section 1983 action, which provides a remedy for

individuals wrongfully imprisoned or prosecuted under the color of law, is best defined as a personal injury tort claim for the purpose of selecting the appropriate statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 277–78 (1985), *superseded by statute*, Judicial Improvements Act of 1990, Pub. L. No. 101–650, 104 Stat. 5114, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004). The Court reasoned that because a section 1983 action provides a remedy for the violation of rights "guaranteed to the person[,] [i]n the broad sense, every cause of action under § 1983 which is well-founded results from personal injuries." *Id.* at 278 (internal quotation marks omitted).

¶28    Because common law analogs to a factual innocence claim under the PCRA are commonly included in the definition of actions for "personal injury" or "injury to the person" under survival statutes, and because a similar federal statutory claim has been defined as a personal injury action for the purposes of statutes of limitations, Mr. Gressman's statutory claim survives because it is an action for "personal injury to a person." *See* UTAH CODE § 78B-3-107(1)(a).

¶29    The dissent reaches a contrary conclusion, reasoning that the phrase "personal injury to a person" could be read broadly to include all actions that are personal in nature or narrowly to include only bodily injury claims. *Infra* ¶ 59. The dissent prefers the narrow interpretation, concluding that the addition of the phrase "to a person" to the term "personal injury" connotes "physical harm to a claimant's 'person.'"[7] *Infra* ¶ 61. Thus, while the dissent concedes

---

[7] The dissent notes that Black's Law Dictionary acknowledges both a narrow and a broad definition of "personal injury," defining the term as both (1) "In a negligence action, any harm caused to the person, such as a broken bone, a cut, or a bruise" and (2) "Any invasion of a personal right, including mental suffering and false imprisonment." BLACK'S LAW DICTIONARY 857 (9th ed. 2009); *see infra* ¶ 59 n.1, n.2. But the narrow definition is confined to negligence actions, while Utah's survival statute includes both intentional torts and negligence, indicating that the broader definition would be more appropriate here. Moreover, the edition of Black's Law Dictionary that was current when Utah first adopted the term "personal injury" in its survival statute clarified that the broader definition of "personal injury" generally applied to statutes: "[Personal injury] is chiefly used in this connection [defined narrowly] with actions of tort for negligence . . . . But the term is also used (usually in statutes)

(continued...)

that Mr. Gressman's claim is for "personal injury," it concludes that this claim is not for "personal injury to a person." *Infra* ¶ 57. We disagree for two principal reasons.

¶30    *First*, the history and context of the adoption of the current version of the survival statute demonstrates that the legislature did not intend that the statute be confined to actions for physical injury. Prior to 1991, Utah's general survival statute provided for the survival of actions "arising out of *physical* injury to the person." UTAH CODE § 78-11-12 (1987) (emphasis added). In 1991, the legislature changed the word "physical" to "personal" so that the statute provided for the survival of actions "arising out of *personal* injury to the person." 1991 Utah Laws 401 (emphasis added). The dissent argues that this change was of no consequence and that the legislature merely changed a statute that clearly provided for the survival of only physical injury claims to a less clear iteration of the same principle. *Infra* ¶ 66. But this reading nullifies the legislature's amendment and improperly assumes this substantive change was an idle act. *See* 73 AM. JUR. 2D *Statutes* § 214 n.3 (2012) ("An amendment to a statute making a material change bespeaks a legislative intent to change the meaning of the statute.").

¶31    In light of the well-established principle that a statutory reference to "personal injury" claims includes all personal torts (as opposed to property torts), the legislature's 1991 amendment evidences an intent to expand the types of actions that would survive. *See supra* ¶¶ 26. Moreover, statutes of limitations for personal injury claims are widely recognized to include all personal tort claims—not just claims involving physical injury—further demonstrating the legislature's intent to expand the scope of the survival statute. *See* 51 AM. JUR. 2D *Limitation of Actions* § 123 (2011) ("A claim which is personal injury in nature, for purposes of [a statute of limitations for personal injuries], need not involve a direct

---

[7] (...continued)

in a much wider sense, and as including any injury which is an invasion of personal rights [such as] malicious prosecution [and] false imprisonment . . . ." BLACK'S LAW DICTIONARY 786 (6th ed. 1990); *see also Martin v. Derenbecker*, 40 So. 849, 851 (La. 1906) ("It might, perhaps, be argued that the application of the words 'personal injuries,' as used in the statute, should be confined to cases of physical injury to the person of the wife; but we take those words to be used in their commonly accepted sense, and, thus used, as meaning any injuries which are personal to the wife, and as including injuries to feelings . . . .").

physical injury, and may encompass a broad range of infringements of personal rights." (footnote omitted)); 54 C.J.S. *Limitations of Actions* § 97 (2005) [renumbered as § 116 in the electronic version] ("Statutes limiting actions for injuries done to the person include actions for injuries done to the individual, as distinguished from injuries done to his or her property," and govern "various particular actions, such as actions for infliction of mental or emotional distress" and "violation of civil rights." (footnote omitted)) And in the context of insurance contracts, the term "personal injury" also includes more than just physical injury, encompassing injuries caused by false arrest and civil rights violations. 46 C.J.S. *Insurance* § 1368 (2007) ("The term 'personal injury' is broader and more comprehensive than the term 'bodily injury' and is synonymous with 'injury to person.'" (footnote omitted)); *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶¶ 32–33, 140 P.3d 1210 (personal injury insurance policy covered liability for false imprisonment); *Vargas v. Hudson Cnty. Bd. of Elections*, 949 F.2d 665, 672 (3d Cir. 1991) (personal injury insurance policy covered liability for civil rights violations).

¶32    Indeed, the legislature's definition of the term "personal injury" in a contemporary statute indicates that it intended to alter the meaning of the survival statute when it changed "physical injury" to "personal injury." At the time the legislature amended the survival statute, Utah's governmental immunity statute defined the phrase "personal injury" to mean "an injury of any kind other than property damage," demonstrating that the legislature recognized that "personal injury" referred to all personal torts as opposed to property torts. UTAH CODE § 63-30-2(6) (1989).

¶33    *Second*, we disagree with the dissent's conclusion that the phrase "to a person" indicates the legislature intended to limit the application of the survival statute to physical injury claims. Both a claim for false imprisonment and a claim for negligent infliction of a physical injury seek redress for harm done "to a person." Thus, this phrase does nothing to distinguish one from the other. If anything, the repetition of the root word "person" in the phrase "personal injury to a person" emphasizes the inclusion of all personal tort claims in the survival statute. Indeed, the most common statutory phrases used to reference personal tort claims are "personal injury" and "injury to the person." *See supra* ¶ 26. The 1991 amendment to the survival statute simply conflated these two phrases to create the term "personal injury to the person." 1991 Utah Laws 401. A subsequent 2008 amendment changing the article "the" to the article "a," such that the statute now reads "personal injury to a person," was deemed by the legislature to be merely stylistic and

did not change the statute's double reference to personal torts. 2008 Utah Laws 396; UTAH CODE ANN. § 78B-3-107, Amendment Notes (2012) (stating the 2008 amendments were stylistic).

¶34     The essence of the dissent's reading of the phrase "to a person" is that "[t]he noun 'person' indicates a natural body." *Infra*, ¶ 61 (internal quotation marks omitted). Thus, the dissent interprets the survival statute to provide for the survival of claims for "personal injury to a *person's body*." But the law recognizes that a person is more than a physical conglomeration of tissue and bones that may be cut, bruised, or broken:

> In law the word 'person' does not simply mean the physical body, for, if it did, it would apply equally to a corpse. It means a living person, composed of body and soul. . . . The mind is no less a part of the person than the body, and the sufferings of the former are some-times more acute and lasting than those of the latter.

*Morton*, 41 S.E. at 485 (internal quotation marks omitted).[8] Additionally, the Supreme Court has emphasized that the rights secured by the U.S. Constitution are guaranteed to persons:

> [T]he Fourteenth Amendment . . . unequivocally recognizes the equal status of every "*person*" subject to the jurisdiction of any of the several States. The Constitution's command is that all "*persons*" shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

*Wilson*, 471 U.S. at 277. In sum, the inherent, unalienable rights recognized by the U.S. Constitution are also fundamental to the meaning of what it is to be a person. Taken as a whole, therefore, the definition of "person" is broader than an individual's natural body and is necessarily coextensive with the "interests of personality" vindicated by personal tort law. *See* RESTATEMENT (SECOND) OF TORTS, Chapter 2, Introductory Note (1965).

¶35     We therefore conclude that Mr. Gressman's claims survived his death and the district court properly substituted his widow into the lawsuit.

---

[8] *Cf.* RENÉ DESCARTES, PRINCIPIA PHILOSOPHIÆ pt. I, § 7 (1644) ("*ego cogito, ergo sum*" [I think, therefore I am]).

## II. THE 1996 VACATUR OF MR. GRESSMAN'S CONVICTION DID NOT CONCLUSIVELY ESTABLISH HIS FACTUAL INNOCENCE

### A. The District Court Erred in Granting Summary Judgment on the Issue of Mr. Gressman's Factual Innocence

¶36    The district court granted summary judgment in favor of Mr. Gressman's widow based upon its finding that the 1996 vacatur of his aggravated sexual assault conviction was effectively a determination that Mr. Gressman was factually innocent. In essence, the district court ruled that the 1996 order vacating Mr. Gressman's conviction collaterally estopped the State from contesting his claim of innocence. We hold that the district court erred because the 1996 order did not conclusively establish Mr. Gressman's factual - innocence, as defined by the PCRA.

¶37    "The doctrine of res judicata embraces two distinct theories: claim preclusion and issue preclusion." *Buckner v. Kennard*, 2004 UT 78, ¶ 12, 99 P.3d 842. "Issue preclusion, which is also known as collateral estoppel, prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 28, 194 P.3d 956 (internal quotation marks omitted). Issue preclusion applies only if four elements are satisfied:

> (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.

*Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 23, 285 P.3d 1157 (internal quotation marks omitted).

¶38    The second element of issue preclusion is not met here because the issue decided by the 1996 order—whether to vacate Mr. Gressman's conviction and grant a new trial based upon newly discovered evidence—is not identical to the issue presented in the instant action under the PCRA—whether Mr. Gressman is factually innocent of aggravated sexual assault. *See Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 49, 250 P.3d 465 (The final adjudication of a federal constitutional claim did not collaterally estop a plaintiff from making a similar claim under the Utah constitution because the legal standards governing these claims are not identical.).

¶39 In order to obtain relief under the PCRA based upon a claim of factual innocence, a petitioner bears the burden of proving by clear and convincing evidence that the petitioner did not

(a) engage in the conduct for which the person was convicted;

(b) engage in conduct relating to any lesser included offenses of the crime for which the person was convicted; or

(c) commit any other felony arising out of or reasonably connected to the facts supporting the indictment or information upon which the person was convicted.

UTAH CODE § 78B-9-401.5(2); *id.* § 78B-9-404(1)(b).[9] In other words, a petitioner seeking a factual innocence determination may not merely attack the sufficiency of the evidence supporting his conviction or attempt to overturn an adjudication of guilt on technical grounds; the petitioner must affirmatively prove innocence of both the crime for which the petitioner was convicted and any related criminal conduct by clear and convincing evidence.

¶40 The district court that vacated Mr. Gressman's conviction in 1996 did not apply the PCRA's factual innocence standard, which was not established by the legislature until 2008. *See* 2008 Utah Laws 2298–2301. Instead, the court cited Utah Rules of Civil Procedure rules 59(a)(4) (grounds for granting a new trial based upon newly discovered evidence) and 60(b) (grounds for granting relief from a judgment or order, including for newly discovered evidence) as the basis for its order vacating Mr. Gressman's conviction and granting him a new trial. In order to grant a new trial under either rule 59(a)(4) or rule 60(b), any newly discovered evidence "must be of sufficient substance that there is reasonable likelihood that with it there would have been a different result."[10] *In re S.R.*, 735 P.2d 53, 58

---

[9] Because these provisions of the PCRA have not been materially altered since Mr. Gressman's claim arose in 2008, we cite the current version of the statute in this section of the opinion.

[10] This civil standard for granting a new trial is different from the standard for vacating a criminal conviction due to newly discovered evidence under the PCRA. The PCRA provides that a conviction may be vacated or modified only if "viewed with all the other evidence, the newly discovered material evidence demonstrates that no reasonable trier of fact could have found the petitioner guilty of
(continued...)

(Utah 1987) (applying rule 59(a)(4)); *accord Kettner v. Snow*, 375 P.2d 28, 30 (Utah 1962) (applying the same standard to rule 60(b)). The district court applied this standard when it ruled that Mr. Gressman was entitled to a new trial because he had produced "newly discovered evidence which is material" and "such evidence would have [had] a material and persuasive power and influence on the jury in considering the guilt of the Defendant[]."

¶41　The district court's 1996 finding that a new trial was warranted is not equivalent to a finding of factual innocence because these two findings involve very different legal standards and resolve different issues. The grant of a new trial under the civil standard applied by the district court in 1996 requires only a finding of a reasonable likelihood that the defendant could have obtained a different result at trial if the newly discovered evidence had been available, while a factual innocence claim requires a convicted individual to affirmatively prove innocence by clear and convincing evidence. In other words, the former is finding that the *State* might not have carried its burden to prove guilt beyond a reasonable doubt, whereas the latter is a finding that the *convicted individual* actually carried the burden of proving innocence by clear and convincing evidence. Because the question of whether to grant a new trial necessarily evaluates the State's burden to prove guilt, while the question of whether an individual is factually innocent involves the convicted individual's burden to prove innocence, the issue resolved in the 1996 vacatur proceeding is not identical to the question of factual innocence at issue in the present action.[11]

---

[10] (...continued)
the offense or subject to the sentence received." UTAH CODE § 78B-9-104(1)(e)(iv); *see also id.* § 78-35a-104(1)(e)(iv) (1996) (The same standard applied when the PCRA was first enacted in 1996.). The PCRA, however, did not control the proceedings that led to the vacatur of Mr. Gressman's conviction because the act did not go into effect until several weeks after the district court vacated the conviction. *See id.* § 78B-9-103. And for the purposes of collateral estoppel, we must evaluate the legal standard the court actually applied in the prior proceeding—not the legal standard that would currently apply or even the legal standard the court should have applied.

[11] The current version of the PCRA clarifies that the vacatur of a conviction based on newly discovered evidence is not equivalent to a finding of factual innocence and that the two claims must be
(continued...)

¶42   Moreover, the relief granted by the district court in 1996—a new trial to determine Mr. Gressman's guilt or innocence on the aggravated sexual assault charge—would be inconsistent with a finding of factual innocence. Indeed, the district court judge that vacated Mr. Gressman's conviction confirmed that he did not find Mr. Gressman to be innocent by commenting during the hearing that "I suppose none of us will ever really know if they [Mr. Gressman and his codefendant] are absolutely innocent of this."

¶43   Because the issue resolved by the district court in 1996 when it vacated Mr. Gressman's conviction and ordered a new trial is not identical to the issue before the court in the current action under the PCRA, the district court erred by finding that the 1996 order conclusively established Mr. Gressman's factual innocence.

### B. We Do Not Find Alternative Grounds for Affirming Summary Judgment

¶44   Mr. Gressman's widow raises several alternative arguments for affirming the grant of summary judgment in her favor. We find none to be meritorious.

¶45   First, Mr. Gressman's widow argues that we should not review the district court's application of collateral estoppel because the State did not preserve the issue by arguing against the preclusive effect of the 1996 vacatur order. This assertion is incorrect. At the summary judgment hearing, the State argued that the 1996 vacatur "is not a finding of factual innocence, and that is not a finding that the defendant did not commit the crime for which he was convicted." *See Warne v. Warne*, 2012 UT 13, ¶ 19, 275 P.3d 238 (issue raised during a summary judgment hearing was preserved). Moreover, the argument advanced by Mr. Gressman's widow misapprehends the preservation rule. *Issues* must be preserved, not arguments for or against a particular ruling on an issue raised below. *See* UTAH R. APP. P. 24(a)(5)(A). "An issue is preserved for appeal when it has been presented to the district court in such a way

---

[11] (...continued)
litigated separately. *See* UTAH CODE § 78B-9-104(3) (providing that a factual innocence petition may not be filed as part of a petition for postconviction relief to vacate a sentence based on newly discovered evidence); *id.* § 78B-9-402(5) ("A person who has already obtained postconviction relief that vacated or reversed the person's conviction or sentence may also file a petition [for determination of factual innocence] . . . if no retrial or appeal regarding this offense is pending.").

that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (internal quotation marks omitted). Thus, even if the State had not argued against the application of collateral estoppel, the issue was preserved when Mr. Gressman's widow presented the issue to the district court by arguing for the preclusive effect of the 1996 vacatur, thereby giving the district court an opportunity to rule on the issue. A party may not raise an issue and induce the district court to rule upon it, and then argue the issue is not preserved in order to insulate the ruling from appellate review.

¶46 Mr. Gressman's widow also argues we should not consider the State's appeal from the district court's grant of summary judgment because the State failed to marshal the record evidence in support of the "district court's factual innocence finding." *See* UTAH R. APP. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). But because a district court does not make findings of fact when granting a motion for summary judgment—finding only the absence of disputes regarding material facts—the marshalling requirement has no application here. *See* UTAH R. CIV. P. 56(c) (summary judgment appropriate only if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law").

¶47 Finally, Mr. Gressman's widow argues that even if the district court erred by basing its grant of summary judgment on the preclusive effect of the 1996 vacatur order, we may affirm on the alternative ground that the State produced no admissible evidence that would create a dispute of material fact regarding his factual innocence. We decline to affirm on this alternative ground because the record evidence before the district court demonstrated disputes of material fact that would preclude summary judgment.

¶48 Mr. Gressman's widow supported her motion for summary judgment on the factual innocence claim with (1) Mr. Gressman's verified petition for postconviction relief, in which he asserts in general terms that he is factually innocent, (2) Mr. Gressman's parole hearing transcript in which he consistently maintained his innocence despite the fact that his denials of culpability could negatively affect his chances of being paroled, and (3) a DNA test report confirming that semen recovered from vaginal swabs performed on the alleged victim did not come from Mr. Gressman. The State supported its opposition to summary judgment with (1) the record of Mr. Gressman's criminal trial,

including the alleged victim's testimony that Mr. Gressman physically assaulted, fondled, and raped her; (2) the transcript of Mr. Gressman's parole hearing in which the alleged victim contradicted Mr. Gressman's assertions of innocence and again stated that he had fondled and raped her; and (3) an affidavit prepared for the factual innocence proceedings and signed by the alleged victim that once again affirmed her testimony that Mr. Gressman physically assaulted, fondled, and raped her and explained that the alleged victim was not sure whether Mr. Gressman had ejaculated during the alleged sexual assault and that the semen recovered from the vaginal swab must have come from prior sexual intercourse with her husband.

¶49   Because the district court found that the alleged victim's affidavit also contained inadmissible statements that were argumentative or were not based upon personal knowledge, the court struck the affidavit in its entirety. Mr. Gressman's widow argues that the State's opposition to her summary judgment motion is based entirely upon the affidavit and that without it, the district court must accept Mr. Gressman's sworn statement of factual innocence. But the PCRA requires the district court to consider "the record of the original criminal case and . . . any postconviction proceedings in the case" in making a factual innocence determination. UTAH CODE § 78B-9-404(3). The district court, therefore, must consider the alleged victim's trial testimony and parole hearing statements, which contradict Mr. Gressman's assertions of factual innocence. Since the record reveals that Mr. Gressman's factual innocence of aggravated sexual assault or any related criminal conduct is disputed, we may not affirm the district court's grant of summary judgment on the alternative grounds suggested by Mr. Gressman's widow.

### III. PREJUDGMENT INTEREST MAY NOT BE ADDED TO ANY AWARD OF FINANCIAL ASSISTANCE PAYMENTS UNDER THE PCRA

¶50   Because we reverse summary judgment in favor of Mr. Gressman's widow, we also reverse the award of PCRA assistance payments and prejudgment interest on those payments, mooting the State's argument that prejudgment interest may not be awarded. But since we reverse for further proceedings and it is possible that the issue of prejudgment interest may arise in this case again, we address the State's argument in order to provide guidance to the district court.

¶51    The version of the PCRA that was in effect when Mr. Gressman's factual innocence claim arose provides for assistance payments to an individual determined to be factually innocent in the amount of "the monetary equivalent of the average annual nonagricultural payroll wage in Utah . . . at the time of the petitioner's release from prison" for the amount of time the petitioner was incarcerated. UTAH CODE § 78B-9-405(1)(a) (2008). This version of the PCRA does not provide for an award of prejudgment interest on this amount.[12]

¶52    We have previously held that prejudgment interest may not be awarded where a "statute fixes a penalty or determines the damages to be allowed." *Fell v. Union Pac. Ry. Co.*, 88 P. 1003, 1006 (Utah 1907). Thus, where a statute fixes the damages to be awarded, the statutory amount is deemed to be the full compensation allowed by the legislature, and prejudgment interest may not be added unless provided for in the statute. Indeed, the relevant version of the PCRA confirms that the legislature did not contemplate compensation in addition to the amount specifically provided by the statute: "Payments pursuant to this part constitute a full and conclusive resolution of the petitioner's claims on the specific issue of factual innocence." UTAH CODE § 78B-9-405(8) (2008).

¶53    Therefore, if assistance payments are ultimately awarded in this case, we hold that prejudgment interest may not be awarded.

## CONCLUSION

¶54    We find that Mr. Gressman's factual innocence claim survived his death and that the district court properly substituted his widow into the case. But the district court erred by granting summary judgment in favor of Mr. Gressman's widow and awarding prejudgment interest on the statutory financial assistance payments. We accordingly reverse for further proceedings consistent with this opinion.

JUSTICE LEE, dissenting:

¶55    I agree with the court's construction of the Post-Conviction Remedies Act, and concur in its determination that Gressman's claims are not subject to survival under that statute. I respectfully

---

[12] The current version of the PCRA specifically provides that district courts may not award prejudgment interest. UTAH CODE § 78B-9-405(8). But as we explained above, the version of the PCRA that was in effect when Mr. Gressman's factual innocence claim arose controls this case. *See supra* ¶ 20.

disagree with its construction of the general survival statute, however. I read that provision, Utah Code section 78B-3-107(1)(a), to apply only to claims for "personal injury *to a person*" in the sense of physical injury to a plaintiff's body. That is the only construction that ascribes independent meaning to the qualifying language, "to a person." It is accordingly the one I would attribute to the legislature. And since Gressman's claim is not of that nature, I would conclude that the claim abated on his death.

¶56    I agree that false imprisonment and malicious prosecution are "the closest common law analogs" to Gressman's statutory factual innocence claim. *Supra* ¶ 24. And I acknowledge that those claims "are categorized as torts against the person (as opposed to torts against property)" at common law. *Supra* ¶ 25. But that is not the question before us. The scope of our general survival statute is not dictated by the treatment of these common law claims under the law of other states, or in federal caselaw on the appropriate limitations period for § 1983 claims. *See supra* ¶¶ 26–28 (noting that such claims are categorized as personal injury claims in various state decisions and in federal cases analyzing the applicable limitations period for claims under 42 U.S.C. § 1983).

¶57    The scope of our statute, rather, is dictated by its terms—which provide for survival not for "personal injury" claims, or for claims for injury "to the person," but for "[a] cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence of another." UTAH CODE § 78B-3-107(1)(a). And that language, read holistically and not subdivided artificially, should properly be read to modify or limit the range of "personal injury" claims subject to survival.

¶58    The majority seeks to parse the component terms of the statute—"personal injury" and "to a person"—and to piece them together additively in a manner depriving the terms of independent meaning. It reasons as follows: "Because common law analogs to a factual innocence claim under the PCRA are commonly included in the definition of actions for 'personal injury' or 'injury to the person' under survival statutes, and because a similar federal statutory claim has been defined as a personal injury action for the purposes of statutes of limitations, Mr. Gressman's statutory claim survives *because it is an action* for 'personal injury to a person.'" *Supra* ¶ 28 (emphasis added). But the court's conclusion does not follow from its premises. The cited "common law analogs" may well be defined in various states as "actions for personal injury" and in others as actions involving "injury to the person." *See supra* ¶ 26. But it does

23

not at all follow that such common law claims are actions "arising out of *personal injury to a person*" under our statute. That is the full-flowered statutory phrase—a phrase not implicated in any of the cases cited by the majority—and the meaning of that phrase cannot properly be equated with its individual component parts. *See State v. Canton*, 2013 UT 44, ¶ 25, 308 P.3d 517 (explaining the need to move "beyond the component terms" of a statute to consider the "full [statutory] phrase in its entirety" (citing *FCC v. AT&T, Inc.*, __ U.S. __, 131 S.Ct. 1177, 1183 (2011) (noting that "two words together may assume a more particular meaning than those words in isolation"))).

¶59   For me the key to interpreting the statute is the time-worn canon of independent meaning, or its corollary presumption against surplusage. *See Rapela v. Green* (*In re Estate of Kampros*), 2012 UT 57, ¶ 19, 289 P.3d 428 (noting our presumption that the legislature uses "each word advisedly" and against a construction rendering any part "inoperative or superfluous, void or insignificant"). By themselves, the individual references to "personal injury" or injury "to a person" could be construed in either a narrow or broad sense. *See Allred v. Solaray, Inc.*, 971 F. Supp. 1394, 1397 (D. Utah 1997). These terms could be understood to be limited to physical harm or injury to a person (as by a cut, bruise, or broken bone),[1] or they

---

[1] *See* BLACK'S LAW DICTIONARY 857 (9th ed. 2009) (defining "personal injury" as "[i]n a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury"); *see also* 1 AM. JUR. 2D *Abatement, Survival, & Revival* § 71 ("[T]he words 'damage to the person' may not extend to torts affecting only feelings or reputation, such as breach of promise, slander, or malicious prosecution, but include only actions resulting from damage of a physical character.").

The majority dismisses this definition on the ground that it is somehow "confined to negligence actions, while Utah's survival statute includes both intentional torts and negligence." *Supra* ¶ 29, n.7. That is not the sense of the above-cited definitions as I understand them. The Black's definition merely indicates that the definition *typically* is applicable in a negligence action; it does not foreclose the possibility of this sense of the term in strict liability. And as the Am. Jur. cite suggests, courts and commentators have adopted this notion outside the context of negligence.

could be read more broadly to encompass all injuries that are "personal" in nature (as opposed to harm to property).[2]

¶60 But in the context of the full statutory phrase, the narrow reading is the better one. Our statute does not speak in the broad terms of the common law; it does not provide for survival, for example, of all tort claims for harms in the nature of "personal injury." Instead it adds to that phraseology by avoiding abatement for claims arising from "personal injury *to a person*." UTAH CODE § 78B-3-107(1)(a) (emphasis added). The addition seems purposeful, particularly as compared to the common-law formulation. And the addition must be understood to add something.

¶61 In context, we should read the meaningful addition ("to a person") as narrowing. We should read it, in other words, as focusing the sub-class of claims saved from common-law abatement to those involving physical harm to a claimant's "person." *See Allred*, 971 F. Supp. at 1398 (concluding, in interpreting this provision, that "[t]he noun 'person' indicates a natural body . . . and the injuries contemplated are injuries to that body").

¶62 The majority rejects this conclusion in light of the "history and context of the adoption of the current version of the survival statute." *Supra* ¶ 30. It notes that before the current language was adopted in 1991, the statute "provided for the survival of actions 'arising out of *physical* injury to the person.'" *Supra* ¶ 30 (quoting UTAH CODE § 78-11-12 (1987)) (emphasis in original). And because the court views the 1991 amendment as "substantive" and "'material,'" it divines an "intent" by the legislature to "expand the types of actions that would survive" to extend beyond "physical injury." *Supra* ¶¶ 30–31. Citing AM. JUR. 2D *Statutes* § 214, n.3 (2012), the court concludes that "'[a]n amendment to a statute making a material change bespeaks a legislative intent to change the meaning of the statute.'" *Supra* ¶ 30.

¶63 That conclusion is tautologically true but analytically unhelpful. It is hard to argue with the proposition that a "material change bespeaks a legislative intent to change the meaning of the statute." *Id.* But that proposition begs the key question, which is

---

[2] *See* BLACK'S LAW DICTIONARY 857 (9th ed. 2009) (defining "personal injury" as "[a]ny invasion of a personal right, including mental suffering and false imprisonment"); UTAH CODE § 63G-7-102(6) (stating that "Personal Injury" for purposes of Utah's Government Immunity Act "means an injury of any kind other than property damage").

whether the change under review is in fact material. Some legislative amendments are not. Some are aimed only at clarification, or at stylistic or semantic refinement. *See, e.g., Rahofy v. Steadman*, 2012 UT 70, ¶ 12 n.12, 289 P.3d 534 ("stylistic changes" made in legislative amendments had "no substantive effect on our analysis"). And those kinds of changes are deemed *not* to "bespeak a legislative intent to change the meaning of the statute." *See* AM. JUR. 2D *Statutes* § 214, n.3 (2012) (noting a caveat for a "clarifying" amendment). So the question is whether the 1991 amendment was a material one or a mere clarification.

¶64　I view it in the latter sense. And my conclusion is no mere assumption. *Supra* ¶ 30 (challenging my approach as "nullif[ying] the legislature's amendment" and "improperly assum[ing] this substantive change was an idle act"). It is based on the terms and context of the 1991 amendment. That amendment's title is telling. It is "AN ACT RELATING TO JUDICIAL ACTIONS; AMENDING THE DEFINITION OF HEIR AND A REFERENCE TO INJURY AS APPLICABLE TO RECOVERY IN WRONGFUL DEATH ACTIONS; AND MAKING TECHNICAL CORRECTIONS." 1991 UTAH LAWS 401. Thus, the amendment expressly encompassed changes the legislature specifically flagged as "technical corrections." And the change in question—replacing "physical injury" with "personal injury"—falls clearly in that category, as it has nothing to do with the other amendments (to provisions other than the survival statute[3]) designated as more material.

¶65　Moreover, the full range of changes made to the survival statute in 1991 are, on their face, obviously technical (non-material) alterations. The changes in question were these:

> (1)(a) Causes of action arising out of [~~physical~~] personal injury to the person or death[~~;~~] caused by the wrongful act or negligence of another [~~, shall~~] do not abate upon the death of the wrongdoer or the injured person [~~, and the~~]. The injured person or the personal representatives or heirs [~~one meeting death, as above stated, shall~~] the person who died have a cause of action against the

---

[3] The provisions altered by the 1991 amendment included not just the survival statute but also substantial amendments to the definition of "heir" under UTAH CODE § 78-11-6.5. 1991 UTAH LAWS 401 (also amending, among other things, the general definition of "heir" as it applied to the rights of an heir or personal representative to sue and be sued and to successive actions on the same contract).

wrongdoer for special and general damages[.However, if], subject to Subsection (1)(b).

1991 UTAH LAWS 401. Thus, the only other changes to this provision were to delete a comma; to replace "shall" with "do"; to break the provision into separate sentences and sub-sections; and to replace "one meeting death, as above stated" with "the person who died."

¶66    None of these changes can conceivably be deemed to "bespeak[] a legislative intent to change the meaning of the statute." *Supra* ¶ 30. For me this confirms what is already apparent in the title of the amendment—that the changes to the survival statute (one of several provisions being altered by the 1991 amendment) are mere "technical corrections," not material alterations.[4]

¶67    I therefore see no basis for reading the 1991 amendment to the survival statute to "evidence[] an intent to expand the types of actions that would survive" a claimant's death. *Supra* ¶ 31. The definition of "personal injury" in the government immunity act, cited by the majority, *supra* ¶ 32 (citing UTAH CODE § 63-30-2(6) (1989)), seems quite unhelpful. As noted above, the quoted term may carry different meanings in different contexts, and in any event the operative term in the survival statute is not "personal injury" but "personal injury to a person," UTAH CODE § 78B-3-107(1)(a). That phrase cannot properly be interpreted to invoke a definition of a different phrase in a different statute. And the definition of that different phrase in that different statute cannot reasonably be deemed to "indicate[] that [the legislature] intended to alter the

---

[4] The cases cited in the Am. Jur. reference cited by the majority, *People v. Mohammed*, 162 Cal. App. 4th 920, 932 (6th Dist. 2008); *Bigelow Group, Inc. v. Rickert*, 877 N.E.2d 1171 (Ill. App. Ct. 2007), are distinguishable. *See* AM. JUR. 2D *Statutes* § 214, n.3 (2012) (citing these cases for the proposition that a "material change bespeaks a legislative intent to change the meaning of the statute"). They involved statutory amendments that are so obviously substantive and material that no one could conceivably read them as making mere technical corrections or stylistic changes. *See Mohammed*, 162 Cal. App. 4th at 932 (statute amended to add new requirement that a defendant released from custody on his own recognizance must file a signed release agreement); *Bigelow Group*, 877 N.E.2d at 1175 (tax statute amended from "the collector shall receive taxes on part of any property . . .", to "the collector may receive taxes on part of any property . . .").

meaning of the survival statute when it changed 'physical injury' to 'personal injury.'" *Supra* ¶ 32.

¶68   The majority's only other ground for its construction is the assertion that, "[i]f anything, the repetition of the root word 'person' in the phrase 'personal injury to a person'" emphasizes a legislative intent to include "all personal tort claims in the survival statute." *Supra* ¶ 33. But that is just a rejection of the canon of independent meaning, cloaked in the court's assurance as to the legislature's real intent. That is insufficient. We should give the operative canon—the presumption against surplusage—its usual effect. The presumption is certainly rebuttable, but the rebuttal must be found in something more than the court's take-our-word-for-it assurance of legislative intent.

¶69   A multi-member, bi-partisan body of legislators has no discoverable *intent*—except to enact the terms of its legislative work-product. Legislators work collaboratively—sometimes combatively—toward a statute representing a majority of votes and, inevitably, a compromise. We cannot possibly discern the body's collective *intent* in arriving at that compromise. There is no such thing.[5] Instead, the reality reflects a range of intentions among a patchwork of legislative factions—of those who preferred a stronger bill, of others who wanted a weaker one (or none at all), and perhaps of some who had a different goal altogether (through logrolling) or even no sense of the matter at all (due to apathy).

¶70   We ignore the nuances of this process when we claim to know the real intentions of the legislature. And we upset the

---

[5] *See* ROBERT E. KEETON, KEETON ON JUDGING IN THE AMERICAN LEGAL SYSTEM 207, 210–11 (1999) ("[L]egislative intent . . . is a legal fiction. Only a natural person can have a state of mind such as intent. No legal entity such as a legislature can have an "intent" in a strictly factual sense."); Charles Fried, *Sonnet LXV and the "Black Ink" of the Framers' Intention*, 100 HARV. L. REV. 751, 759 (1987) ("[W]ords and text are chosen to embody intentions and thus replace inquiries into subjective mental states. In short, the text *is* the intention of the authors or of the framers.") (emphasis in original); JOHN CHIPMAN GRAY, THE NATURE AND SOURCES OF THE LAW 170 (2d ed. 1921) ("[T]he psychic transference of the thought of an artificial body must stagger the most advanced of ghost hunters").

compromise inherent in legislation when we attribute an *intention* to do something other than to enact the text of a statute.[6]

¶71    I see no basis for an inference of the legislature's intent to include "all personal tort claims in the survival statute." *Supra ¶ 33.* The only intent that I have the capacity to discern is in the text of the statute. And that text appears to me to provide for survival of only a subset of "personal injury" claims—of those involving injury "to a person" in the sense of physical injury.

¶72    Only that reading gives effect to each term of the statute. The court's broader construction focuses myopically on "personal injury" without regard to the qualifying phrase "to a person"—openly "conflat[ing] these two phrases." *Supra ¶ 33.* Thus, it is the majority's reading that would "nullif[y]" and render "idle" the legislature's pronouncement. *See supra ¶ 30.* The legislature did not amend the statute simply to save "personal injury" actions; it amended it to save actions arising out of "personal injury to a person." I would reject the majority's construction and embrace mine on the ground that only mine preserves independent meaning for both clauses.[7]

¶73    I would accordingly affirm the dismissal of Gressman's PCRA claim. That claim is not for physical injury to a person. It is a claim for "personal injury" (not injury to property), but not for

---

[6] *See* Frank H. Easterbrook, *What Does Legislative History Tell Us?*, 66 CHI.-KENT L. REV. 441, 446–47 (1990) ("Statutes are drafted by multiple persons, often with conflicting objectives. There will not be a single objective, and discretionary interpretation favors some members of the winning coalition over others."); Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 HARV. J.L. & PUB. POL'Y 61, 68 (1994) ("Peer inside the heads of legislators and you will find a hodgepodge.").

[7] My approach is also in line with our precedent. Although we have not previously interpreted the statutory language, we have applied it with some regularity, and I am aware of no case where this court has employed the statute to save any claims except those involving physical injury to a person. *See Meads v. Dibblee*, 350 P.2d 853, 854, 857–58 (Utah 1960) (involving claims arising from the death of a woman injured in a car accident); *In re Estate of Leigh*, 313 P.2d 455, 455, 458 (Utah 1957) (involving claims of physical injury stemming from a car accident); *Fretz v. Anderson* (*Fretz I*), 300 P.2d 642, 645, 650–51 (Utah 1956) (same), *overruled on other grounds by Fretz v. Anderson* (*Fretz II*), 308 P.2d 948 (Utah 1957).

"personal injury to a person," as it does not seek compensation for any physical harm to a claimant's body.[8] I would therefore hold that Gressman's claim abated on his death, and affirm on that ground.

––––––––––––

[8] I recognize, of course, that in some contexts "the law recognizes that a person is more than a physical conglomeration of tissue and bones." *Supra* ¶ 34. But that is hardly the universal legal sense of this term. The notion of "person" is among the broadest, most wide-ranging terms in the law. *See* BLACK'S LAW DICTIONARY 1257–58 (9th ed. 2009) (providing no less than 30 definitions and legal terms of art applicable to the word "person"). Surely the court does not mean to exclude the possibility that injury "to a person" may sometimes mean physical injury to a person's body. It does at least sometimes. *See Allred*, 971 F. Supp. at 1398; *see also supra* n.1. So it is analytically unhelpful to identify counter-examples of extra-corporal notions of "person" in the law.